Postlewait & Creagan and Keeler v. Howes et al.

POSTLEWAIT & CREAGAN AND KEELER *v.* HOWES *et al.*

3   365
101   43

3   365
104   369

3   365
115   54

3   365
123   698

3   365
f144   118

Where a creditor's bill, to reach the equitable estate of a party who is deceased, is filed, the administrator of the intestate, is a necessary party to the bill.

The law contemplates the appointment of an administrator in all cases, where the intestate dies within the state, or where he shall die a non-resident of the state, having property to be administered upon within the county, or where such property is afterwards brought into the county; and in the absence of some averment or showing to the contrary, the appellate court cannot presume that administration has not been granted.

Where a creditor's bill alleged that the complainants recovered certain judgments against R. G. A. as the surviving partner of the firms of A. B. & Co. and J. & R. G. A., and that R. G. A. died, leaving a widow (the respondent), but *did not state* when or where he died, nor whether the said J. A. was still living; and where the administrator of R. G. A. was not made a party, and the bill made no reference to the administrator or estate of J. A. although it appeared from the proof that he died in California, nor negatived the fact that there were such administrators; *Held,* That there was no sufficient reason shown by the bill or proof, for not making the administrator of the intestate, a party to the bill.

Where a proceeding is instituted in which it becomes material to ascertain the condition of the assets of the estate of an intestate, or in which a complainant seeks to make his claim chargeable on the real estate in the hands of the widow or heirs, and no administrator has been appointed, the cause should be continued to give an opportunity for such an appointment.

In a proceeding in equity, to reach the equitable estate of an intestate, and subject the same to the payment of his debts, the objection that his administrator is not made a party to the bill, may be made on the hearing.

Where, however, the objection is made, for the first time, on the hearing, the bill will not be dismissed; but the cause will be remanded (if in the appellate court), with leave to the complainant to bring in the necessary party.

Where it appeared from a creditor's bill, that one of the judgments described therein, was obtained in the name of one of the complainants, for the use of a third party, but the bill alleged that the said judgment was the property of the said complainant; *Held,* That this averment was sufficient to show that the complainant was the party in interest, and being such, the suit was properly brought in his name.

Where a creditor's bill described several judgments, which were recovered against R. G. A. as surviving partner of two different firms, and one judgment which was recovered against the firm of J. & R. G. A.; and where it was urged against the bill on the hearing, that the administrators of the other deceased partners were not made parties, and that it should be shown that there were no *partnership* assets, before the creditors could seek to reach an equitable interest in the individual property of one of the partners; *Held,*

1. That it was at the option of the complainants to proceed, either against the surviving partner, or against the representatives of the deceased partners. 2. That having elected to take judgments against the surviving partner, they had the further right, to seek to make such judgments from his individual property; and that the administrators of such other partners, need not be made parties. 3. That in relation to the judgment against the firm, the bill should have made the administrator of J. A. as well as of R. G. A. a party, and shown that his estate was insolvent, and that there were no partnership assets from which to make such judgment.

Where a creditor's bill was filed against the widow of a deceased debtor, to reach real property alleged to have been purchased with the money of the deceased, and the title taken in the name of the respondent, for the purpose of defrauding creditors; and where it was urged upon the hearing, that the respondent was entitled to dower in the premises, and that her rights should be protected in this proceeding; and where the respondent made no such claim, by her answer, or otherwise preferred it; *Held*, That under the circumstances, should she even be entitled to dower, such claim unpreferred and unassigned, could not defeat the rights of the creditors, to subject to sale the interest of the husband in the property.

Although the Code, as well as the statute of 1843, requires that judgments on which executions have not issued within five years from the date of their rendition, shall be revived by *scire facias*, before a party can have execution to enforce their collection, such judgments are not dormant, but remain and continue in full force and virtue.

The jurisdiction of courts of equity, where the object is to remove obstacles alleged to have been fraudulently interposed to prevent the collection of judgments, is exercised *not* to aid legal process, but independent of, and without reference to such process.

Judgment creditors have the right to ask the aid of a court of equity, to remove obstructions in the way of the collections of their judgments, though they may afterwards be required, before obtaining execution, to revive such judgments by *scire facias*.

Where it appeared from a creditor's bill, that executions on the judgments described therein, had not been issued within five years from the date of the rendition of such judgments, and it was urged, that as executions could not issue on such judgments, until revived by *scire facias*, the complainants had no right to proceed in equity to subject property to the satisfaction of the same; *Held*, That the ability or right, or the want of ability or right, to issue execution, is not the test by which to determine whether a judgment creditor has a right to file such a bill.

Where a creditor's bill charges, and where it is proved on the hearing, that the debtor is in fact insolvent, and that an execution, if issued, must necessarily be returned unsatisfied, there is no reason for requiring the creditor to go through the fruitless form of exhausting his legal remedy, by return of execution, no property found.

Where the proceeding is against the estate of a decedent, the rule that the creditor must show that he has exhausted his legal remedy, before he can

proceed in equity against the equitable assets of the debtor, has no fair or legitimate application.

*Appeal from the Des Moines District Court.*

THIS was a creditor's bill filed by complainants, to reach certain real estate held by the respondent, Mary A. Howes, which they allege should be made liable to the payment of certain judgments which they obtained against her late husband, Robert G. Anderson.    The bill alleges that on the 1st day of February, 1845, the complainants, Postlewait and Creagan, recovered two several judgments against the said Anderson—one being against him as the surviving partner of the firm of Anderson, Bennett & Co., and the other as surviving partner of the firm of J. & R. G. Anderson; and that on the 14th of June, 1844, said Keeler, for the use of one Shornberger, recovered judgment against James & R. G. Anderson, and afterwards on the 12th of November, of the same year, another judgment, for the use of the same person, against the said Robert G., as survivor of the said J. & R. G. Anderson, all of which judgments are averred to have been rendered by the District Court of Des Moines county, and to be still in full force, and wholly unsatisfied.    The bill further charges, " that at the time said judgments were rendered and ever since, the said Robert G. had no visible property, from which said judgment could be made; that execution was issued upon one of said judgments and returned, no property found; and that your orators have been wholly unable to make the amount thereof, from the said Robert G."    It is also shown by the bill, that in November, 1845, and March, 1849, the said Robert G. purchased the property in the bill described, paid therefor with his own means, but procured the deed for the same to be made to his wife, Mary A. (since intermarried with the respondent, John M. Howes), for the purpose of defrauding said complainants and his other creditors, and to hinder and delay them in the collection of their debts.    When or where the said R. G. departed this life, is not shown—the only averment on this subject,

being "that said Robert G. has departed this life, leaving the said Mary A. his widow." Nor is there any averment that said James Anderson is not still living, further than may be inferred from the statement, that one of the Keeler judgments was obtained against the said Robert G. as survivor, &c. The bill is filed against the said Mary A. alone—the administrator of the said Robert G. is not made a party, nor is any reference made to the administrator or estate of the said James Anderson.

The answer denies that said judgments were obtained; denies the fraud; avers that the property was paid for from defendant's own means; and that it does not belong to the estate of Robert G. This bill was filed October 3d, 1853. The cause was heard on bill, answer, replication, and depositions; dismissed without prejudice, as to the said P. and C., and sustained as to the said Keeler, and a decree entered that the real estate be sold to satisfy his judgment. The complainants P. and C., and the respondents appeal. Other matters material to the decision of the case, will appear from the opinion of the court.

*D. Rorer*, for the appellants.

1. The record shows that Keeler is not a party in interest. Shornberger is the *real* party in interest, to the Keeler judgments at law, the Keeler judgments having been for his use. Keeler could not receipt them, nor discharge them. "Civil actions must be prosecuted in the names of the real parties in interest," &c. Code, § 1676. Then Keeler cannot prosecute this suit, Shornberger is the *real* party in interest, and should have filed the bill, stating his recovery in Keeler's name, but for his use. *Edmonds* v. *Montgomery & Shaw*, 1 Iowa, 143.

2. Three of the judgments relied on in the bill are dormant. No execution was issued on them, nor can issue until revived by *scire facias.* Laws of 1843, § 50, 478; Code, § 1886.

3. To maintain the bill, if otherwise sustained, the complainants must be in a condition to issue executions on their

judgments at law, and as to *each of them*. *McElwain* v. *Willis et al.*, 9 Wend. 559; *Child* v. *Bunce et. als.*, 4 Paige, 309; 1 Maun. (Mich.) 213; *McKinley* v. *Combs*, 1 Monroe, 106; *Hendricks* v. *Robinson*, 2 Johns. Ch. 283; *Brinkerhoof* v. *Brown*, 4 Johns. Ch. 651; *Weed* v. *Pierce*, 9 Cow. 722; *Parmalee* v. *Egan*, 7 Paige, 610.

4. The only exceptions to this rule, are: 1st. Where the proceeding is against personal property, as in *Beck* v. *Burdett*, 1 Paige, 308; or where the proceeding is against the administrator or executor of a deceased debtor (possibly), as in *Nelson* v. *Hill*, 5 How. 127.

These are cases relied on by complainant in this case, but really are not applicable to the case at bar, as this is a case against, not the administrator or executor of the deceased debtor, but against his widow in her individual capacity, seeking to divest her of a legal estate, under a pretence that it was conveyed to her at her husband's procurement, in fraud of his creditors, whereas it does not appear by the bill, nor pleadings, but that the estate of the deceased husband in the hands of the administrator, is amply sufficient to pay this and every other debt. But it is argued that there is no administration on the estate of Robert G. Anderson—that he died in California, &c. The evidence on this subject is *silent*. If there is no administration, then the creditor can administer. Although the bill avers there was no *visible* property, yet there may be money.

5. Parts of the depositions were improperly admitted in evidence. See the bill of exceptions as to the proof of Robert G. Anderson's declarations, by Mr. Lewis, and by Mr. Sunderland. *The declarations of the husband are not admissible. Chapin* v. *Pease*, 10 Conn. 69; *Alexander* v. *Goold*, 1 Mass. 165; *Woodruff* v. *Whittlesey*, Kirby (Conn.) 60; *Reichart* v. *Castators*, 5 Binn. 109. It will be seen too, that the objections were taken on filing cross interrogatories, the earliest possible opportunity, claimed again at the trial, and when overruled, *exceptions* were taken.

6. If these objections to parts of the depositions were well taken below, they are available on appeal; and the part

thus objected to, should now be excluded.   *Wilson* v. *Troop*, 2 Cow. 195; *Atkinson* v. *Marks*, Ib. 691.   The court above, after excluding the irrelevant, inadmissible testimony, if it reverses the decree, should proceed to make such decree as ought to have been made by the court below.   *Diffendorf* v. *Winder*, 3 Gill & John. 311.

7. The statute of Elizabeth against fraudulent conveyances—which is the original basis of all proceedings of this nature—does not apply to this particular case, in principle. It applies to *alienations* of property by the debtor, and *not to money investments* made by him for the benefit of others.   1 Amer. Leading Cases, 77 ; *Crozier* v. *Young*, 3 Mon. 157 ; *Gowing* v. *Rich*, 1 Iredell's Law, 553.   It is conceded, however, that in equity (where nothing else can be reached), such investments may be laid hold of.   1 American Leading Cases, 77.   But neither the bill, nor the evidence in the case before us, make out such a case—for it does not appear but that the judgments might all be made off the estates of the decedents, although Robert G. Anderson may not have had visible property as alleged, but of which there is no proof; and if they can, then, however gratuitous this conveyance to Mrs. Anderson (Mrs. Howes), may have been on the part of her then husband, or at his procurement, still it is conscientious and good in equity, against him and his creditors, and the creditors of the *firms* of which he had been or was a member, *provided* that *he*, or those *firms*, or the estates of *him*, or of the *other members* of these *firms*, are *good for these debts ;* and if any other member is made to pay more than his proportion, he must first look to the *estate* of Robert G. Anderson for contribution, if such estate is *able*, before even he could call on the widow for the proceeds of even a *voluntary settlement made on her* by her husband.

8. The said judgment creditors can only look in equity, to such surplus of the estate of separate partners, as may remain or be found, after the separate debts of such partner are satisfied—and so creditors of individual partners, have no claims on copartnership funds, until the copartnership debts are paid.   But the decree in this case, *overrides* both

these principles. See *Wilder* v. *Keller*, 3 Paige, 167; *McCulloh* v. *Dashiel's admr.*, 1 Har. & Gill, 96; *Alsop* v. *Mather*, 8 Cow. 584; *Caldwell* v. *Stielman*, 1 Rawle, 212; *Bell.* v *Newman*, 5 Serg. & Rawle, 78; *Wilby* v. *Finney*, 15 Mass. 116.

9. The administrators of the said Robert G. Anderson, and of the other copartners or judgment debtors, have not been made defendants to said judgments, and there may be personal effects in the hands of the administrator or administrators, sufficient to pay said judgments, and if so, such personal effects are first liable. See decision of this court, in the case of *Hiram Reynolds and others* v. *May & Andor*, not published; also *Child* v. *Bunce*, 4 Paige, 309; Story's Equity Pleadings, §§ 172–3 and 4, and 181; *McKay* v. *Greer*, 3 Johns. Ch. 57; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *Wire* v. *Smith*, 4 Gill & John. 297; *Lawrence* v. *Trustees*, 2 Denio, 577; *Stewart* v. *Carson*, 1 Desau. 500; *Rogers* v. *Rogers*, 1 Paige, 188; *McCloud* v. *Roberts*, 4 Hen. & Munf. 443; *Hoice* v. *Brewer*, 3 Gill & John. 153; *Piatt* v. *Saint Clair*, 6 Ham. 233; *Piatt* v. *St. Clair's Heirs*, Wright, 526; *Clows* v. *Dickenson*, 9 Cow. 402; *Garnett* v. *McCoun*, 6 Call, 308; *Grant* v. *Duane*, 9 Johns. 591; *Bank of U. S.* v. *Richie et als.*, 8 Pet. 128; 4 Kent's Com. 421; *Vose* v. *Philbrooks*, 3 Story, 335. "Where a bill in equity is brought to recover a debt against a deceased partner, the other partners are proper and necessary parties." *Vose* v. *Philbrook*, 3 Story, 335; *Nelson* v. *Hill*, 5 Howard, 128. This latter case will be claimed, it is believed, as authority in behalf of the complainants in this case; but an examination of the reported case, will show it to establish: 1. That that case was against the representatives (administrators) of the deceased partner, and not against a *grantee* of the decedent, or of a person conveying at the instance and procurement of the decedent. 2. "That the creditor of a partnership may at his option, proceed at law against the *surviving partner*, or go in the first instance into equity against the *representatives* of the deceased partner," and the reason is *obvious*, for in either event, the creditor is still after a partner debtor, or the

*estate* of such partner; but the present effort is to pass by the estate or representatives of the deceased, and to seek out property alleged to have been conveyed or procured to be conveyed to a third person as a gift, which gift, if it was one, must be held sacred until the estates of the giver and of his copartners, debtors in the same debt, are exhausted.

In the case referred to in 5 Howard, 133, the court say: "It is the right also of the representatives of the deceased partner, Whitsett, and that of the surviving partner, Hill, to participate in settlements in which their interests are decidedly involved; and an omission in the bill to convene these *joint* parties in interest for this purpose, with the representative of the other deceased partner, Gray, would have exhibited a *palpable and material defect in the proceedings* of the complainants." Then it is clear, that the administrators of James Anderson, deceased, and of Bassett, and of Robert G. Anderson, should be made co-defendants, before equity could charge this property in the hands of Mrs. Howes, even if otherwise liable. And if James Anderson's estate is good for the debts of Keeler, or Robert G. Anderson's estate is good for the debts of Keeler, in that event, he, Keeler, cannot maintain this bill; and if the estates of Bassett or of James Anderson, are either of them good for the debt of Postlewait & Creagan, then they cannot maintain this bill. In the case from 5 Howard, 133, the court say: "In order to ascertain the precise extent of Gray's responsibility, (Gray was the administrator of Thomas, one of the partnership debtors), *accounts* should be proper, not only between the *two firms* and *their respective creditors*, but also *between these firms themselves*." Again, in the same case, it is clearly shown, that the individual property of the deceased, Robert Anderson, could not be reached, unless the effects of the firm are exhausted.

10. By the exhibits, it will be seen, that two-thirds, twenty feet, of the ground, was conveyed by Cox and wife, to Mrs. Anderson, as early as the 19th day of November, 1845, and she holds by no other title. This bill was not filed, or suit commenced, until the 23d day of September, 1853. The

remedy was barred by statute of limitations, which need not be pleaded, but this court decides by analogy to the statute. Code of Iowa, § 1695, 245; *Lewis* v. *Marshal*, 5 Pet. 470.

11. In any event, Mrs. Anderson, as widow of Robert G. Anderson, would be entitled to her dower in the property, against creditors and every one else, even if the title was in her husband's own name, and not the less so, as it is in her name and sought to be charged as his. *Blow* v. *Maynard*, 2 Leigh, 30. But what that dower is, whether in fee or for life, does not certainly appear, as neither bill, answer, exhibits, nor evidence, shows the date of said Robert Anderson's death; not less, however, than a life estate in one-third, by any law that is or has been in force.

12. There is no evidence to show but that Robert G. Anderson was perfectly solvent when his wife received the deed from Cox and from McCutchens, and the circumstance that *three of the judgments* have become dormant, and no step has been taken until after Robert's death, is a suspicious one; especially as this very claim may have been *barred* in *probate*, and that fact may have been in the way of making the respective administrators co-defendants. See Code, §§ 1373, 1367. From the latter reference, it will be seen that complainants could not enforce either of these judgments in probate court, before taking a certain oath, however able the estates of the decedents may have been; and I think that under said section, and according to the decision of the case of *Reynolds et als.* v. *May & Andor*, decided by this court, that complainants must first go into probate. In that case, this court say: "When the debt is established against the executor, and the estate in his hands proves insufficient to pay, and the heirs have received a part of the estate, they can be called upon to surrender up a sufficient amount to pay the demand." In the case at bar, it is true that there are judgments and not unliquidated debts, as in the Reynolds' case, but the same principle applies to each, as the Code, referred to above, requires that, "unsatisfied judgments rendered prior to the death of the decedent, shall be entered in the catalogue of claims, and so much thereof be allowed as the

plaintiff will show by his own oath or otherwise, is still un-
paid." Code, § 1367. This section seems to be conclusive
as against complainants.

13. The bill is demurrable, and such demurrable defect
may be objected on the final hearing. Story's Equity Plead-
ings, §§ 503, 504, 505 ; *Baker* v. *Biddle*, Bald. C. C. 394;
where it is laid down, that " an objection," for want of parties,
want of equity, &c., " need not be made by demurrer, plea,
or answer, but may be made at the hearing or on appeal,"
and so say our rules of court. The bill then is : 1. Demur-
rable for want of proper parties. 2. For want of averments
that the judgments have been entered and allowed in pro-
bate, in the *catalogue of claims* against the several estates or
against said Robert G. Anderson's estate, and for want of the
oath required by said section 1367 of the Code. 3. De-
murrable as to Keeler, for as much his judgments *belong to
Shornberger*. 4. Demurrable as to three of the judgments,
for want of executions, and returns of *nulla bona*. It is ob-
vious to my mind, that on the case made in the bill, the com-
plainants cannot hold the property in question liable.

*Starr & Phelps*, for the appellees.

This case comes up on appeal by both parties, thus pre-
senting the whole case on its merits. The facts charged in
the bill, are conclusively established by the evidence, and
the whole case turns upon questions of law, raised by defend-
ants.

It is insisted by defendants : 1. That complainants are not
entitled to relief, because they have not exhausted their re-
medy at law, by issuance of execution on *all* their judgments.
We insist that this in the case at bar, was unnecessary, be-
cause in this class of cases, courts of equity have jurisdiction
on two grounds : 1. That the original indebtedness was that
of a *partnership*. 2. Because the proceedings are against the
*estate of a decedent*.

In these two cases, a court of equity has jurisdiction in the
first instance. No execution could issue against a deceased
debtor. *McDowell* v. *Cochran*, 11 Illinois, 32 ; *Doolittle* v.

*Bridgman et al.,* 1 G. Greene, 265; *Nelson et al.* v. *Hill et al.,* 5 Howard, 127; *Hagan* v. *Walker,* 14 Howard, 29; *Thurman* v. *Reese,* 3 Kelly, (Geo.) 449.

One execution was returned *nulla bona,* after the last judgment was rendered, and the bill charges, and the answer does not deny, "*nulla bona,*" and the fact is also proved by the deposition of J. P. Sunderland. It was not necessary to revive judgment by *scire facias. Hagan* v. *Walker,* 14 How. 35. 2. Defendants insist that we should make the administrator of Robert G. a party. But there was no administrator. The testimony shows that Robert G. died in California, leaving no property here, which shows that no administrator could have been appointed here. It was not our duty to have one appointed, nor are we compelled by any rule of law to do so. The defendant Mary A. had the first right to the appointment, if any could be made, and it is not for her to object now that none has been appointed. Again, this is not a case in which it is absolutely essential to make the administrator a party. It is only absolutely necessary when there are assets in his hands which are *primarily liable. Vide* Story's Equity Pleadings, § 74 *a;* also, Ib. §§ 170 to 177. But this objection comes too late. It should have been raised by demurrer, plea, or answer, which should have pointed out the essential parties. Story's Equity Pleadings, §§ 170 to 177 *a,* and §§ 237, 541, 2 and 3; *Child* v. *Brace,* 4 Paige, 314.

3. Defendants say that we are *partnership* creditors, and cannot come upon the separate estate of the debtor, and cite numerous authorities. This doctrine does not apply when the question arises between the debtor or his representatives and his creditors, but is only enforced as between creditors. 1 Harris & Gill, 96. The authorities cited by defendants are cases between *separate and partnership* creditors.

4. It is urged that Keeler's judgments being for the use of Shornberger, the latter is the beneficial owner, and Keeler cannot maintain this bill. But this is only matter of abatement, and cannot now be urged, as the point was not made by demurrer, plea, or answer, and having answered to the

bill, defendant is estopped from denying complainants' capacity to sue.   Again, the bill avers, and the answer does not deny, that Keeler is the owner of said judgments; it is, therefore, admitted.

5. The statute of limitations does not apply to this case. It does not run against trust estates.   The point is not raised by demurrer, plea, or answer, and cannot be raised now.  The old statute of limitations did  not extend to cases of *frauds*, and the present statute had not barred them, when this bill was filed.

6. Defendant, Mary A. Howes, claims *dower* in the land. To this she is not entitled.   We are seeking to subject the *funds* of the debtor, which have been improperly applied by him to the purchase of the land, to the payment of our claims. In equity, he should have employed them in paying those claims, and we have an equitable lien on those funds for that purpose, and no improper act of his can divest that lien ; but courts of equity, which treat that which is unlawfully done, as if it had not been done, and in carrying out this principle, treat money as land, and land as money, will consider and treat this land as money, of which the defendant is not endowable.   The case is in principle the same, as if the defendant had unlawfully taken her husband's money, and laid it out in the purchase of real estate in her own name.   Her husband was never seized of any estate in the land, and she, upon no principle, can claim dower therein.

We ask a final decree in this court, in favor of Postlewait & Creagan, for the amount of their judgments and interest, and that the decree in favor of Keeler and against Roads be affirmed, and that the real estate in dispute be decreed to be sold, and the payments applied first to the payment of complainant's claims and costs, and the balance to T. Roads, or defendant Mary A. Howes, or their legal representatives.   There can be nothing gained by sending the case back to be tried anew, unless the court should consider it necessary to remand the case, in order that an administrator should be appointed and made party defendant.   We may add, that there is nothing in the case to

show that the deceased partners of Robert G. left any assets or have any administrators, and were the fact otherwise, we are not judgment creditors of theirs, nor could we become so, no suit being allowable against their executors, except under peculiar circumstances.

WRIGHT, C. J.—To reverse the decree below in favor of the complainant, Keeler, and to sustain so much of it as dismissed the bill as to the other complainants, the respondents have urged various grounds, which we proceed briefly to notice. The first in order is the objection, that the administrator of the estate of Robert G. is not made a party to the bill. Complainants admit substantially, that under ordinary circumstances, the administrator should be joined in bills of this character. It is urged, however, by them, first, that in this instance, there was no such personal representative; and second, that the objection comes too late.

There is nothing in the bill in express terms, negativing the fact that there is such administrator. On this subject nothing is said. The law contemplates the appointment of such administrator, in all cases when the intestate dies within the state, or where he shall die a non-resident of the state, having property to be administered upon within the county, " or where such property is afterwards brought into the county." In the absence of such averment, or showing to the contrary, we cannot presume that administration has not been granted. But it is said, that the non appointment of an administrator is shown from the fact, that decedent is averred to have had no property within the state, and from the further fact, that he was a non-resident at the time of his death. The bill does not disclose when Anderson died. The proof shows that he died in California, but for anything that appears, his family was at the time within this state, and he, in legal contemplation, a resident of it. *Penley* v. *Waterhouse*, 1 Iowa, 498; *Hinds* v. *Hinds*, 1 Ib. 36. But if we should even grant that the non-residence and want of a legal interest in property, was sufficiently shown, we cannot think the practice regular or safe, to proceed in

cases of this character, without having an administrator ap-pointed. It is the duty of an administrator to protect and guard the interest of the estate, and to see that claims are only paid in the due and regular course of administration. The personal estate is primarily liable for the payment of debts, and the real estate can only be reached, in the event that the personal effects are inadequate to satisfy the debts and charges. It is his duty to collect such personal assets, and to defend against any claims which may not be a just charge against the estate. The widow, or heir, as such, have no such duties devolving upon them. The administrator be-comes the personal representative of the deceased, stands in his place and stead, and no judgment can properly be taken for a claim against an estate, until such administration. To seek to subject the real estate, whether legal or equitable, of the heir, in the first instance, to the payment of a claim against the decedent, would certainly be novel and subver-sive of the whole policy of the law, regulating the settlement of estates. *May and Andor* v. *Heirs of Reynolds*, June T. 1854. If a proceeding should, therefore, be instituted, in which it becomes material to ascertain the condition of the assets of the estate, or in which a complainant seeks to make his claim chargeable on the real estate in the hands of the widow or heirs, and no administrator has been appointed, the cause should be continued, to give an opportunity for such an appointment, which appointment, under the law, may be made, either at the instance of the creditors or those ad-versely interested. We conclude, therefore, that there is no sufficient reason shown by the bill or proof, for not making the administrator a party. The remaining question on this part of the case is, whether the objection comes too late ?

Courts of equity aim to do *complete* justice, and not to do it by halves. To accomplish this, it is eminently necessary that the bill should bring before the court, all proper and necessary parties. The rights of no one should be finally de-cided in a legal or equitable tribunal, until he has an oppor-tunity to appear and maintain or vindicate his right; and to enable a court of equity to do *complete* justice in every case,

it reasonably and even necessarily follows, that where a decision is made upon any particular subject matter, "the rights of all persons whose interests are immediately connected with that decision, and affected by it, shall be provided for as far as they reasonably may be." If it shall appear by the bill, that a proper party is not so before the court, as to afford him an opportunity to be heard, the usual method is to demur, or to make the objection by plea or answer. And if his non-joinder cannot *prejudice* the rights of the parties before the chancellor, the objection should be made by demurrer, plea, or answer, and will not be fatal, if urged for the first time on the hearing. But if it appears that the rights of those who are made parties, may be prejudiced by such non joinder, or that there may be a failure to mete out complete justice, the objection may be made on the hearing, or the chancellor himself may state the objection, and refuse to proceed to make a decree ; and in this respect, the proceedings in courts of law and equity present a most striking difference. At law, as a general rule, only persons directly and immediately interested in the subject matter, and whose interests are of a legal nature, need be made parties. In courts of equity, however, the general rule is as stated by Lord HARDWICK, that all persons ought to be made parties who are necessary to make the determination complete, and quiet the question. *Poor v. Clarke*, 2 Atk. 515 ; Story's Equity Pleadings, §§ 74 *a*, 75, 76, 76 *a*, 237, 541 ; 1 Daniell's Ch. Pleadings and Practice, 295, 330 ; 2 Story's Equity Jurisprudence, § 1526.

The question remains then, whether it is necessary to make the administrator a party in such a proceeding as the one before us, in order to prevent prejudice to other parties—mete out complete justice—and quiet the question in controversy ; and much that we have already said is applicable to this inquiry.

Would not the ancestor, if living, be a necessary party ? To this question, there can be but one answer. Why is he necessary ? One reason, not to name others, is, that he may have an opportunity to show that the judgments have been

paid, or that he is solvent; for in either event, the alleged creditors have no right to inquire into any alleged fraud connected with the sale of the property. He alone is presumed to be able to show these facts, or to have in his possession, and under his control, the required evidence. If then *he* would be a necessary party, why not his administrator, who becomes his representative, and who is by the law intrusted with the duty of settling the estate. He is presumed to know whether the debt is paid, or whether the estate is solvent, and should have an opportunity to be heard. If the debt is paid, or the estate solvent, the proceedings would of course fail. But in addition to this, the administrator is the trustee for *all* of the creditors, and it is his duty to protect the property for their common benefit, as well as to preserve and hold for the heirs, what may remain after all debts are satisfied. How are the rights of other creditors to be protected, if the grantee alone is made a party, as in this case? They have no opportunity to be heard, even through the administrator, the common trustee.

We have found no case, in which the administrator has been held not to be a necessary party. On the contrary, the books abound in cases in which the necessity of making him a party is recognized. 1 Daniell's Ch. Pl. & Pr. 330; Story's Eq. Pleadings, §§ 170 to 173; *McDowell* v. *Cochran*, 11 Ill. 31; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *Bank U. S.* v. *Ritchie et al.*, 8 Peters, 128; *Lawrence* v. *Trustees, &c.*, 2 Denio, 577; *Wise* v. *Smith*, 4 Gill & Johns. 297; *Sweney et al.* v. *Ferguson*, 2 Blackf. 129. And this rule finds strong support from the following sections of the Code, 1918, 1367, 1369, 1436.

The administrator should have been made party, and the objection may be made on the hearing. For this reason, the decree below in favor of Keeler, is erroneous, and as a consequence, correct so far as it denies relief to the other complainants. Where, however, the objection is made for the first time on the hearing, we are unwilling to recognize the rule, that such want of proper parties shall operate to dismiss the bill. The better practice is to remand the cause, with leave to complainant to bring in the necessary parties. This

practice has been recognized by this court.  *Kriechbaum* v. *Bridges & Powers*, 1 Iowa, 14; and will be found to be sustained by authority.  Story's Equity Pleadings, §§ 239, 541.

This view of the first question, must result in reversing the cause, and remanding it for further proceedings; and ordinarily we should not examine other points made by counsel.  As many of them may arise, however, in a subsequent trial, we deem it proper to dispose of those which seem to be most important.  It is urged by respondent, that the judgments in favor of Keeler, were recovered for the use of Shornberger, and that Keeler has, therefore, no right to prosecute this action.  The bill, however, charges that the said judgments are now the property of the complainant.  This is sufficient to show him to be the party in interest, and being such party, he properly brings this suit.

It is next urged, that the administrators of the other deceased partners are not made parties, and that it should be shown that there are no *partnership* assets, before the creditors can seek to reach an equitable interest in the individual property of one of the partners.  All of the judgments, except one, are against Robert G. Anderson alone.  The complainants had a right to such judgments.  It was at their option to proceed either against the surviving partner, or against the representatives of the deceased partners.  And having elected to take judgments against the surviving partner, they have the further right to seek to make such judgments from his individual property; and the administrators of such other partners need not be made parties.  Story on Part. § 362, note 3, and *Nelson* v. *Hill*, 5 How. 133.  One of the judgments, however, in favor of Keeler, appears to have been rendered against James, as well as Robert G. Anderson.  If he is dead (which is left indefinite by the bill), we think his administrator, for reasons already stated, should be made a party; and it ought also to be shown, that his estate is insolvent, and that there are no partnership assets from which to make such judgments.

It is further claimed, that the respondent is entitled to

dower in this property, and that her right in this respect, should be protected in this proceeding. At present, it is perhaps sufficient to say, that she makes no such claim by her answer, nor has she otherwise preferred or asked it; nor has any assignment of it been made. Under such circumstances, should she even be entitled to dower in this property, such claim unpreferred and unassigned, could not defeat the right of the creditors to subject to sale the interest of the husband therein. *Claussern* v. *La Franz*, 1 Iowa, 227.

Respondents further urge, that a portion, if not all, the judgments of complainants are dormant, and that as executions could not issue thereon, until revived by *scire facias*, they have no right at this time to proceed in equity to subject property to satisfy the same. We think, however, that the ability or right, or want of ability or right, to issue execution, is not the test by which to determine whether a judgment creditor has a right to file such a bill. Though the Code (§§ 1886, 1887), as well as the statute of 1843, 478, requires that judgments, on which executions have not issued within five years from the date of their rendition, shall be revived by *scire facias*, before a party can have execution to enforce their collection, yet such judgments in fact, remain and continue in full force and virtue. They continue to be liens on the real estate of defendant for *ten* years, and the statute of limitations could not be successfully pleaded to any action brought on the same, until after the lapse of *twenty* years from their rendition. Laws of 1846, 33; Code, § 2489. It is not strictly true, therefore, to say that these judgments were dormant at the time of filing this bill. There may have been no right to issue execution, but for all other purposes, they continued in full life and had legal existence. And it is proper to bear in mind, that the jurisdiction in such cases, is exercised, not to *aid* legal process, but independent of, and without reference to, such process. The object is to remove an obstacle, which it is alleged is fraudulently interposed to prevent the collection of these judgments. As such creditors, they have a right to ask its removal, though when removed, they should even be turned over to their proper in-

dependent *legal* remedy, to obtain the process of the law to make the sale. The case of *Hagan* v. *Walker et al.*, 14 How. 29, and *Burrough* v. *Elton*, 11 Vesey, 28, are directly in point, and clearly recognize the doctrine, that a judgment creditor may thus proceed in equity, though he might afterwards be required before obtaining execution, to revive his judgment by *scire facias.*

Another objection, and the one perhaps most strongly pressed, is, that complainants have not exhausted their legal remedy, by having execution issued and returned *nulla bona*, and that until this has been done, they have do right to ask equitable aid. On the part of respondents, it is claimed to be the settled law, that the return of an execution unsatisfied is necessary, before the chancellor has jurisdiction of a bill of this character; that the insolvency of the debtor must be first shown; and that this cannot be done in any other way than by a return of *nulla bona*. Complainants, on the other hand, insist that the jurisdiction is not determined alone by such *return* of no property found, but that if it can be otherwise shown, that there is no other property, and that the issuing of an execution would be unavailing, the right to follow the equitable estate, is as complete and perfect, as after a return of *nulla bona*. But if this is not true, he, in the second place, insists that such return is not necessary, where the proceeding is against a decedent's estate. Aside from the adjudicated cases, we strongly incline to the opinion, that the first position of complainants is in accordance with reason and common sense. If the creditor shall charge in his bill, and prove on the hearing, that the debtor is in fact insolvent, and that an execution, if issued, must necessarily be returned unsatisfied, we see no reason for requiring him to go through the fruitless form of exhausting his legal remedy, by return of execution, no property found. Under such circumstances, there is no legal remedy to exhaust, for he shows that he has none. It is true that such returns of *nulla bona*, may in legal contemplation, be the most *satisfactory* method of establishing the fact of insolvency, but practically it would be scarcely more conclusive or convincing to the mind of the chancellor,

than if proved by other means or in other ways. And yet, doubtless, the current of authorities hold such return to be necessary; and without at this time, further doubting or questioning the reasonableness of such rule, we think it has no fair or legitimate application, when the proceeding is against the estate of a decedent. As already stated, the personal property of the decedent is primarily liable to the payment of his debts. As to this portion of the estate, the judgment creditor has no priority or preference over others. If this shall be insufficient to pay the debts and charges, the administrator may upon proper showing, obtain an order to sell the real estate. And as to this portion of the estate, the judgment crditor has no preference over other claims, except such liens as are allowed by law in his favor. The personal estate is to be administered and distributed by the administrator. It cannot be sold under execution issued, or any judgment recovered, in the lifetime of the decedent, nor can the real estate be made subject to such execution, until the administrator, heirs, and devisees, are made parties to such judgments, and an order of court obtained awarding execution against the same. Then, as he cannot take personal property, and cannot reach the legal estate in lands, until he obtains an order of court awarding execution, why shall an estate be compelled to pay the expense of such a proceeding that can avail nothing, if the equitable property is all there is from which the judgment can be made? And this suggestion is of conclusive force, when it is borne in mind, that in order to have such execution, he must aver that there is real estate, describing it, against which the execution should be awarded. The law does not require vain things; *Collins* v. *Vandever*, 1 Iowa, 378; neither does it require impossible things.

But independent of the view arising from the statute, we are satisfied that the rule requiring a return of *nulla bona*, has no application when the creditor's bill is filed against a decedent's estate. Such cases form exceptions to the general rule. And in some of the states, the exception is carried so far as to allow the creditor to proceed in chancery, to reach

the equitable estate of one deceased, before judgment, and this has been permitted in our own state. *Brigman* v. *Doolittle*, 1 G. Greene, 265 ; and see *Thompson* v. *Brown*, 4 Johns. Ch. 630 ; *Sweney* v. *Ferguson*, 2 Blackf. 129 ; *Kipper et al.* v. *Glancey et al.*, Ib. 356 ; *O'Brien* v. *Coulter*, Ib. 421 ; *Russel* v. *Clarke's executors*, 7 Cranch, 89; *McDowell* v. *Cochran*, 11 Ill. 31.

Other questions are raised by counsel, of less importance than those above noticed. But as the cause will be remanded and reheard, we forbear at present any reference to such other points, and especially so, as from the attitude of the case, after bringing in the necessary parties, such questions may not arise. We may add, however, that it may well be doubted, whether the insolvency of the decedent is averred with sufficient distinctness, and whether a satisfactory adjudication of the matters in controversy, would not be more certainly attained, if both parties should be allowed to replead.

So much of the decree as sustains the bill in favor of Keeler, is *reversed*, and the whole cause remanded with leave to amend, &c.