CECIL M. STEWART, v. R. C. HALL, L. W. AIKIN, M. J. SHEMERHORN, WINHURST INVESTMENT Co. and C. J. ELLER, and JAMES A. FIKE and L. B. HANSON, Appellants.

**Parties:** REAL PARTY IN INTEREST. An action must be prosecuted in the name of the real party in interest. In this action the plaintiff was fraudulently induced by defendants to exchange money and property for land, the property embracing the assets belonging to a corporation, but which it transferred to one of the defendants. *Held,* that the corporation was a necessary party to an action to cancel the conveyance.

**Same:** APPEAL. Where the question of a defect of parties is not raised until the trial is nearly completed, the Supreme Court will not ordinarily dismiss the case, but remand it with leave to bring in the necessary parties.

*Appeal from Polk District Court.*—HON. JAMES A. Howe, Judge.

SATURDAY, OCTOBER 2, 1909.

THE opinion states the facts. The defendants, Hanson and Fike only, appeal.—*Reversed* and *remanded.*

*L. I. Abbott* and *Henry & Henry,* for appellants.

*Hume & Hamilton,* for appellee.

LADD, J.—Three of the defendants conspired to defraud plaintiff of his property. One of them, L. W. Aikin, arranged for the purchase of two thousand eight hundred and eighty acres of land in Ransom County, N. D., of the D. S. B. Johnston Land Company, at $8 per acre, and that the contracts of sale be forwarded to a bank in Des Moines, to be signed and delivered on the payment of $1,779.68, with deferred payments of $19,200, upon being advised of the purchaser's name. Another, R. C. Hall, pretended to have purchased this land on contract, and to be entitled to a conveyance upon the making of deferred payments. The part of the third member of the combination, M. J. Shemerhorn, was to engage as agent of plaintiff in finding a deal by which he might exchange his property for land. Each did his part. Shemerhorn introduced plaintiff to Hall, accompanied the representative of plaintiff to examine the land, and participated generally in the perpetration of the fraud by means of which the deal was consummated. He had agreed to "pool commissions" (the plunder) with Hall and Aikin, and subsequently received from them in settlement for his services a quarter section of land in Minnesota and three quarters in Nebraska subject to $3,000 incumbrance. The plaintiff paid him $500, and promised $200 more, in the supposition that he was acting for him. Claiming to own the land, Hall, by misrepresenting its quality and value, induced the plaintiff to enter into a contract by the terms of which he was to pay therefor $23 per acre in property, being the assets of the Interior Wood Fitting Manufacturing Company at $30,000, twelve lots subject to an-incumbrance of $1,700 at $12,010, and $4,130 in money; the deferred payments on the land being $19,200. The agreement was subject to inspection of plaintiff, and he sent his uncle, Chas. F. Leonard, with full written instructions to examine the land. Shemerhorn

accompanied him, and Aikin joined them at Fargo, N. D.
From Sheldon in that State they drove to what Aikin
represented to be the land described in the contract, and,
after inspecting it, Shemerhorn dictated a report, in which
Leonard joined, in which the several tracts were said to be
level, without gullies, creeks, considerable depressions, or
elevations, the soil a deep sandy loam, covered by a good
growth of grass, without rock, sand, gravel, or gumbo,
nearly all tillable, and that loans of $10 or $12 per acre,
or of twenty-five to forty per centum of value, could be
procured.    Basing his action on this report, plaintiff con-
firmed the agreement, and a binding contract was entered
into, and the papers appropriate for the transfer of the
property to Hall executed.    The plaintiff paid the $4,130
into the bank, and, upon signing the contracts, received a
duplicate from the Johnston Land Company, stipulating for
the conveyance of the land to him when the remaining
$19,200, with interest, should be paid.    So that these de-
fendants had succeeded in obtaining the property, and in
addition thereto $2,350.32 for their trouble in so doing.
Hall and Aikin immediately proceeded to dispose of what
they had received, and made such progress as to excite the
fears of Shemerhorn lest he lose the promised third of the
plunder, and he caused suit therefor to be instituted, which
resulted in a settlement as indicated.    The suspicions of
plaintiff finally were aroused, and he departed on April
21st to examine the land, and found all of it to be sandy,
sparsely covered with grass, of uneven surface, with many
sloughs, water holes, and ponds, and sand dunes ranging in
height from ten to twenty feet.    The soil was not a "sandy
loam," and little of it was tillable.    His testimony to this
effect is corroborated, and the record fully sustains the
conclusion that Aikin, in pursuance of the scheme, pur-
posely pointed out to Leonard and Shemerhorn land other
than that described in the contract, and by this means pro-
cured the false report as to its character upon which plain-

tiff in executing the contract and in procuring the conveyance of property acted. No purpose will be served by reviewing the evidence by which the foregoing facts are found to be established. It is enough to say that a perusal of the record leaves none of them in doubt. Upon his return plaintiff immediately instituted this action, which resulted in the canceling of all conveyances to Hall and to his grantees and the rendition of judgment against Hall, Aikin, and Shemerhorn for the amount of the cash payment. None of the last-named parties have appealed; but L. B. Hanson, to whom a bill of sale of the assets of the manufacturing company was executed, and James A. Fike, who acquired the legal title to the lots, have appealed to this court. Each claims to have been an innocent purchaser, and both that plaintiff is not the real party in interest, and therefore ought not to be permitted to prosecute the action.

As appears, the suit is prosecuted in the name of Cecil M. Stewart individually, and undoubtedly the negotiations with Hall were conducted in his individual capacity. But the bill of sale of the assets of the Interior Wood Fittings Manufacturing Company to Hall was executed by that company, which was incorporated and owned the property. Hall transferred these to Eller, who had no interest in them, and he, at Hall's instance, to Hanson. If Stewart was president of, or even a stockholder in, the company, this did not create such an interest in the property as to authorize him to maintain the action. But he did not testify that he was even a stockholder. The corporation was the owner. The statute (section 3459, Code) requires an action to be prosecuted in the name of the real party in interest. The record indicates that the corporation, and not Stewart, owned the property; and, this being so, the Interior Wood Fittings Manufacturing Company was a necessary party to the action. But it is said this is not

1. PARTIES:
real party
in interest.

important, for that the company allowed Stewart to take what was received for the bill of sale. How this would affect the ownership of the property exchanged, or the company's right to recover damages flowing from the fraud practiced in divesting it thereof, is not perceived. Even though it might choose to give away what it received, it was not thereby precluded from challenging the integrity of the methods resorted to in order to induce it to part with property transferred to Hall. Nor was there any evidence before the court that plaintiff was the owner of the lots in controversy. These were conveyed to Hall by plaintiff and his mother, Dora M. Stewart, as trustees of the Joseph B. Stewart estate. Subsequent to the beginning of this suit, and long before submission, they resigned, and B. S. Walker and Mary Stewart were appointed in their stead.

Plaintiff testified that there are five beneficiaries under the will of Joseph B. Stewart, deceased, but aside from this there is no proof that he had any interest in the realty. But, according to section 3459 of the Code: "Every action must be prosecuted in the name of the real party in interest; but an executor or administrator, a guardian, a trustee of an express trust, a party with whom or in whose name a contract is made for the benefit of another, or party expressly authorized by contract may sue in his own name, without joining with him the party for whose benefit the action is prosecuted." Now the evidence fails to show that plaintiff was owner of the personal or real property, so he was not the real party in interest. Even if he might have prosecuted the suit as trustee of the estate of Joseph B. Stewart, without making the other trustee a party, he has not undertaken to do so. The statute permitted him to sue in his own name as trustee, without joining the beneficiaries, but did not relieve him from indicating in what capacity he claimed relief. Undoubtedly he was a proper party, as he was entitled to recover the money

paid to Hall; but, as he was not shown to have an interest in the other personalty or the realty save in a capacity other than alleged, the district court erred in awarding relief. It is no answer to say that the decree was not prejudicial in declaring his equity superior to the equities of Hanson and Fike, for this does not appear. Moreover, there are enough real controversies for the courts to decide without speculating on the probable result where no interest has been proven. As sustaining these views, see *Tod v. Crisman,* 123 Iowa, 693; *Postlewait v. Howes,* 3 Iowa, 365. As said in the last case: "Courts of equity aim to do complete justice, and not to do it by halves. To accomplish this it is eminently necessary that the bill should bring before the court all necessary and proper parties."

Had the right of plaintiff to prosecute the action been raised prior to the hearing, we should have been inclined to dismiss the cause as to Hanson and Fike; but defect of the parties was not alleged until the hearing was nearly concluded, and for this reason the practice said to be the better in *Postlewait v. Howes, supra,* will be followed, and the cause remanded, with leave to plaintiff to bring in the necessary parties. We are the more inclined to pursue this course because of the voluminous record and the possibility of making use of the evidence on another trial.—*Reversed* and *remanded.*

2. SAME: appeal.