Eastern Dis.
June, 1832.

MORRIS
vs.
CROCKER.

---

## MORRIS vs. CROCKER.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The provisions of the act of 1810 for the recording of titles to land in the office of the parish judge of the parish where the land is situated, do not apply to the parish of Orleans.

In a forced sale every formality of the law must be strictly complied with.

The lands of a nonresident cannot be seized and sold for taxes due to the corporation of the city of New-Orleans, if at the time of the seizure he have an agent residing in the city.

There must be an amicable demand prior to the institution of the suit in order to charge the defendant with costs.

The plaintiff claimed a lot of ground in the city of New-Orleans, to which the defendant set up title under a sale made by the city marshal, to satisfy a judgement of the City Court, by which the lot in question was decreed to be sold for taxes due the city. In case of eviction, the defendant claimed the value of his improvements; and further, he pleaded the want of an amicable demand.

The plaintiff, who was a nonresident, exhibited in evidence a notarial act of sale of the lot in question, executed in the city of New-Orleans, and proved that at the time of its seizure, he had an agent residing in the city.

The jury found a verdict in support of the plaintiff's title, but condemned him to pay to the defendant the value of his improvements, and to the payment of costs, no amicable demand having been made prior to the institution of the suit. From a judgement on this verdict the defendant appealed.

*Hennen*, for appellant, made the following points:

1. The act of sale given in evidence by the plaintiff, was never enregistered in the office of the parish judge of the parish where the land is situated, and is therefore null and void against the defendant, a third possessor.

2. The defendant established a legal title to the property of which he is in possession.

*Pierce, contra:*

1. None of the requisites of the law have been complied with to give defendant any title.

MATHEWS, J., delivered the opinion of the court.

This suit is brought to recover two lots of ground, situated in the faubourg Annunciation, alleged to be held by the defendant without title.   He pleaded the general issue, and sets up title in himself under an act of sale made by the city marshal in executing a judgement rendered by the City Court, by which the property in dispute was decreed to be sold for taxes, &c.   The cause was submitted to a jury in the court below, who found a verdict in support of the title of the plaintiff, but condemned him to pay five hundred dollars to the defendant for improvements, &c.   Judgement was pronounced in conformity with the verdict, and the defendant appealed.

The points relied on by the counsel for the appellant, depend for their force on the interpretation of the seventh section of an act passed in 1810, relating to the recording of notarial acts in the several parishes of the then territory of Orleans, and for other purposes; and of the act of the state legislature, passed in 1828, to fix the mode in which town lots and other lands situated in the city of New-Orleans and its limits, the owners of which are nonresidents, may be seized and sold for city taxes, &c.

<div style="float:right">EASTERN DIS.<br>June, 1832.<br><br>MORRIS<br>vs.<br>CROCKER.</div>

This is (we believe) the first instance in which the validity of a notarial act of sale, or its effect against third persons, has been contested on account of not being recorded in the office of the parish judge of the city and parish of New-Orleans. An office kept by the judge of this parish for the recording of deeds, as required by the seventh section of the act of 1810, has never been created by legislative authority, nor does it exist in any shape. The provision of the act relied on as a protection to the title of the defendant against the effect of that of the plaintiff, has reference to those parishes where the office of parish judge was established, combining with the judicial powers of the officer those of notary and recorder of mortgages, &c. These powers not being possessed by the judge of the parish and city of New-Orleans, the law is not applicable to this parish, and has been so considered ever since its enactment. At that time there had been few if any appointments of notaries in the other parishes of the territory, the parish judge being *ex officio* notary for his entire parish, whilst in New-Orleans there were many notaries, all keeping offices of record for acts by them passed. Authenticated sales and transfers of property situated in any part of the state, could be made in the city of New-Orleans, and the intention of the law was, that notarial acts of sale executed out of the parish where the property sold was situated, should be recorded in that parish; but it was not intended to operate on property situated within the parish of New-Orleans. The proper places to look for acts of sale relating to property therein, were, at the time the law was passed, the various notarial

<div style="float:right">The provisions of the act of 1810 for the recording of titles to land in the office of the parish judge of the parish where the land is situated, do not apply to the parish of Orleans.</div>

EASTERN DIS. June, 1832.

MORRIS
vs.
CROCKER.

In a forced sale every formality of the law must be strictly complied with.

offices of the city. We, therefore, conclude, that the provisions of the law of 1810 cannot justly be so construed as to affect the title of the plaintiff.

The evidence of title, on the part of the defendant, is in our opinion, not sufficient to support his right of property and possession to the lots in dispute. He claims under a forced alienation made by the city authorities under the sanction of the act above cited. It was a sale for taxes, and in such sales according to principles of jurisprudence established by several decisions of the Supreme Court of the United States, and which prevail generally in the several states of the union, the purchasers are bound, in order to give force and validity to their titles, to show that all the formalities required by law in alienations of this kind, have been fully and faithfully complied with. These principles we consider to be founded in justice and sound policy. Sacrifices of property of great value are frequently made in consequence of slight inattention of owners or their agents, by officers of the government in the collection of taxes, and avarice and immoral cupidity often lead purchasers to avail themselves of advantages acquired under legal pretexts, contrary to the moral precept which requires men to act towards their neighbors as they would think just towards themselves in similar circumstances.

The lands of a nonresident cannot be seized and sold for taxes due to the corporation of New-Orleans, if at the time of the seizure he have an agent residing in the city.

The preamble of the act under consideration, has already been stated. The first section authorizes the collection of taxes and other dues to the corporation by nonresidents who have no agent in the city, in a particular mode of pursuit as pointed out by the law. In the present case, it is shown by the evidence, that the plaintiff always had, or at least had at the time the pursuit for taxes and other expenses was instituted against his lots, an agent in the city. The seizure could not, according to the express terms of the act, have rightfully taken place whilst the owner had an agent in the city. Without taking into consideration any other omission of the formalities required in order to have effected a valid alienation of the lots in dispute, so as to deprive the owner of his title, we deem this circumstance alone sufficient to invalidate that claimed under the sale of the marshal.

The question about costs alone remains to be settled. In the court below, they were decreed against the plaintiff, and this part of the judgement is complained of by the appellee.

The evidence does not clearly show that an amicable demand was made previous to the institution of the action. By the Code of Practice, such demand need not be made in writing; but it is fairly to be implied from the 169th article, that a demand of this nature must be made previous to bringing a suit, in order to charge a defendant with costs; and as no distinction is made by law in relation to the kind of action about to be prosecuted, the courts of justice can make none.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the District Court be affirmed, and that the costs of this appeal be paid by appellant.