Stafford, Executor, vs. Twitchell et al.

## No. 7729.

### GEO. A. STAFFORD, EXECUTOR, VS. H. M. TWITCHELL ET AL.

In this controversy, the Plaintiff and some of the Defendants were citizens of Louisiana, and the other Defendants, citizens of Vermont. One of the latter applied for the removal of the *whole suit* to the Circuit Court of the United States, under the laws of Congress, on the ground of prejudice and local influence against her. *Held* that, under none of the Removal Acts of Congress, could her application be granted. Those laws examined *seriatim* in the Decision.

An assessment of property in the name of L. H. Stafford or of L. A. Stafford is not an assessment in the name of the *owner*, when L. H. Stafford never was owner, and when L. A. Stafford had been dead for ten years; when the property had been vested in his succession, and when that fact had been formally notified to the proper officers and was ascertainable from the archives of their own offices.

A notice of the tax collector addressed to "B. S. Lee, agent of L. H. Stafford," is not a notice to the Succession of L. A. Stafford or to an agent of said succession.

A seizure of property as "the property of L. A. Stafford," is no seizure as against the Succession of L. A. Stafford; and the recording of such seizure is not the recording of a seizure against said succession.

A sale of property, belonging to the Succession of L. A. Stafford, as the property of L. A. Stafford, and for taxes due by L. A. Stafford as owner, is inoperative against said succession.

A transfer of the right, title and interest of L. A. Stafford in property, ten years after his death, operates no divestiture of the title of his succession.

The Plaintiff in this case was under no necessity to tender to Defendants the amount of taxes, costs, etc., for which the property was sold, as a condition precedent of his right of action. Guidry vs. Broussard, 32 An. 924, affirmed.

Defendants are not entitled to recover from Plaintiff the collectors's fees, damages and costs of advertising, paid by them as part of the price of sale, because the property was not legally assessed and Plaintiff was, therefore, not in default.

APPEAL from the Seventeenth Judicial District Court, parish of Red River. *Pierson, J.*

### *Egan & Ogden* for Plaintiff and Appellee:

First—The correctness of the ruling of the lower court, refusing the application for removal to United States Court, should be tested, where no evidence was offered on the trial of the application, on the allegations contained in the petition.

Second—The allegations contained in the petition are not sufficient to entitle the defendant to a removal of the case to the Federal Court, because there is no allegation that there is involved in this case a controversy which is wholly between citizens of different States, and which can be fully determined as between them.

Third—There was no evidence offered to show that there was any controversy between Mrs. Twitchell and the plaintiff, which could be fully determined between them without the presence of the other defendants. Burch vs. Davenport R. R. Co., 46 Iowa, 449.

Fourth—The law of removal does not allow the splitting up of a case, leaving one part in a State court, and transferring the other to the Federal Court. Trafton vs. Nongues, 4 Sawyer, 178; 2 Tenn. 656.

Fifth—The words suit and controversy are convertible terms. 18 Wall. 567; Osborne vs. Bank of U. S., 9 Wheaton, 739.

Sixth—When the tax collector's sale is a nullity, the plaintiff need not tender back the purchase price to recover the property. 26 An. 189.

Seventh—The sale of the property for taxes bid for by Steele was not a sale, but a payment of the taxes, because Steele, the lessee, was indebted to Stafford, and not in a condition to be the purchaser. Cooley on Taxation, 345; Burrough on Taxation, 447.

Eighth—The tax sale was void, because the land was not sold in forty-acre tracts as the law required.

Ninth—The tax sale was void, because there was no legal assessment against the owner of the property; the assessments were made in the name of L. A. Stafford, who was killed in the battle of the Wilderness, and defendant, Steele, was lessee of his executor.

Tenth—The bid was by Steele; the deed was to Steele and Twitchell. Tax sales must be to the highest bidder, and as the conveyance must be in execution of a sale actually made, the sale to one man, and the deed to another, such deed conveys no title. Cooley on Tax Titles, 344.

Eleventh—Any arrangement among purchasers that no competition shall take place, as Steele testifies existed between himself and Twitchell, is a fraud, and vitiates the sale. Cooley on Taxation, 340

Twelfth—The levy of the parish tax (fourteen and one-half mills) for 1871, 1872, 1873 and 1874, and for the payment of which this property was sold, was illegal, and beyond the authority of the police jury. 30 An. 1085.

Thirteenth—All statutes are mandatory which expressly or by implication limit the amount of taxes which may be levied. A levy beyond that amount is in excess of the jurisdiction of the officers, and is as void as if no statute existed. Cooley on Taxation, 295, 296 and 297.

Fourteenth—An excessive levy is void, whether it is made excessive by including those taxes which are lawful or unlawful, or in any other manner. Cooley on Taxation, 344.

Fifteenth—If any part of the tax is illegal, however small, the sale is void. Burrough on Taxation, 301.

*L. B. Watkins* for Defendants and Appellants.

The opinion of the Court was delivered by

FENNER, J. The plaintiff, as executor of Leroy A. Stafford, deceased, of the parish of Rapides, La., brings this action against Marshall H. Twitchell and Jesse G. Steele, of the parish of Red River, La., Mrs. Elizabeth Twitchell, of the State of Vermont, and Marshall H. Twitchell, Jr., a minor represented by the last named defendant as guardian, appointed in Vermont and recognized by the courts of this State.

The petitioner represents that the succession of L. A. Stafford was owner of 1517 68-100 acres of land, situated in Red River parish, and described in the petition; that the said lands are now in possession of the defendants who claim to be owners thereof, under a certain tax sale made on the 6th of January, 1874, by which they were adjudicated to Marshall H. Twitchell and Jesse G. Steele. Steele subsequently sold his interest in 320 acres of the land to Twitchell; and Twitchell, after this, sold his whole interest in the land to his mother, Mrs. E. Twitchell, which accounts for her presence as defendant. The minor is the son of Marshall H. Twitchell, who was married at the date of the tax-purchase, and whose wife has since died, and the minor is made a party as the representative of her community interest.

The petition alleges that the tax sale was a nullity for various

reasons therein set forth, and prays that the same be decreed null and void, that petitioner's title be recognized and enforced, and for a judgment for rents and revenues.

The foregoing is a sufficient statement of the issues, for the purpose of determining an application for removal to the Federal court, which must be first determined, because it involves our jurisdiction in the case. One of the defendants, Mrs. Twitchell, filed a petition praying for the removal of the cause to the United States Circuit Court. The allegations of this petition are substantially as follows:

1st. That she is a party defendant, and that her interest involved therein exceeds two thousand dollars;

2d. That she is, and was at the date of suit, a resident and citizen of Vermont, and that the plaintiff is, and was at the said date, a citizen of Louisiana;

3d. That by virtue of sections 639, 640 and 670 of the U. S. Revised Statutes, and of the act of Congress of 1875, she is entitled to have the cause removed;

4th. That " the grounds on which she bases her right and claim to the removal are that she verily fears and believes, and has good ground to fear and believe, that from prejudice or local influence, one or both, that now exists and has existed against her in the said parish of Red River, La., and against her vendor M. H. Twitchell, therein, she will not be able to obtain justice in said State court or courts."

Her application was timely and accompanied with tender of the requisite bond; and she prayed for the removal of the *suit*.

The question to be determined is whether her petition presents sufficient grounds for removal under any of the laws referred to.

Sections 640 and 670 of U. S. Rev. Statutes have no conceivable application to case.

Section 639 contains three paragraphs setting forth distinct grounds for removal, as follows:

*First.* This embodies the provision of the judiciary act of 1789, and applies only where the suit is exclusively between a citizen of the State where it is brought and a citizen of another State. Such is not the case at bar, where the party plaintiff and some of the defendants are citizens of the same State.

*Second.* This embodies the provision of the act of 1866. It is applicable to a suit like the present, where the plaintiff is a citizen of the State of the forum, and the defendants are, some of them, citizens of the same State, and another is a citizen of another State. The latter is only authorized to remove, when "there can be a final determination of the controversy, so far as concerns him without the presence of the other defendants as parties in the cause;" and, even in that case,

he is not authorized to remove *the suit*, but only the particular *controversy* between himself and plaintiff, without prejudice to the latter's right to proceed with his suit in the State court as against the other defendants. The petition for removal cannot be sustained under this provision, for several reasons, viz: (1), it does not set forth the essential allegation on which the right rests; (2), it prays for the removal of the *whole suit* and not of the particular controversy between plaintiff and the petitioning defendant; (3), the grounds on which she expressly bases her right to removal, viz: "local prejudice or influence," have no application under this provision; and (4) from the nature of the cause, being a suit to declare null the common title of the several defendants to lands held by them in indivision, and to establish the title of plaintiff to the whole of said lands as against all the defendants, there cannot be a final determination of the controversy, so far as concerns the petitioner for removal, without the presence of the other defendants.

*Third.* This embodies the act of 1867, commonly called the "local prejudice or influence act." Though the petition presents the requisite affidavit as to "local prejudice or influence" prescribed in the act, the application cannot be sustained under this provision, because by its terms the latter applies only to cases where the suit is exclusively between a citizen of the State of the forum and a citizen of another State.

This disposes of section 639 U. S. Rev. Statutes, and it now only remains to consider the act of March 3, 1875.

The only provision of this act which is germane to the instant case is the following, viz: "When in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants, actually interested in such controversy, may remove said suit to the Circuit Court of the United States." The only relief authorized by this act is the removal of the whole suit.

Dillon on Removal of Causes, p. 29, and cases there cited.

Burch vs. Davenport, 46 Iowa, 449.

We do not think there is, in this suit, any controversy which is wholly between citizens of different States, and which can be fully determined as between them."

Plaintiff claims title to the whole of the lands in controversy under a single title. He alleges that they are in possession of all the defendants under pretended titles, having directly or derivatively a common origin, viz: a tax sale to the two resident defendants, which is sought to be annulled. As to the 1197 acres held in indivision by Steele and Mrs. Twitchell, it cannot be questioned that they are, both, proper and necessary parties to the controversy touching the same.

As to the 320 acres which Mrs. Twitchell claims to hold under title from Twitchell and Steele, her co-defendants, we think that plaintiff asserting a single title to the whole of the land, and alleging that defendants are in possession and have no title, cannot be driven to split up his action, because as to part of the land, the alleged void title is claimed to be vested in one of the defendants alone.

The subject of controversy is the nullity of the tax sale, in which all the defendants are interested, and which cannot be properly determined except contradictorily with them all. If, however, it could be held that the controversy as to 320 acres was one wholly between Mrs. Twitchell and plaintiff, and capable of being fully determined between them, we should unhesitatingly decline to grant the only relief afforded by this act, viz: the removal of the entire suit, on the ground of the unconstitutionality of the act. This grave question has not yet been adjudicated by the Supreme Court of the United States in connection with this particular act.

The Federal judicial power, as conferred by the constitution, so far as dependent exclusively on the citizenship of the parties, is confined to " controversies between citizens of different States."

The removal of this whole suit would necessarily vest the Federal court with jurisdiction not only of the controversy between plaintiff and Mrs. Twitchell, but also of that between plaintiff and the other defendants who are his fellow citizens of the same State.

An act of Congress cannot confer such jurisdiction. The jurisprudence on this is so uniform and well-settled, that we see not how Congress could have assumed such a power, or by what possible argument it can be sustained.

See Ober vs. Gallagher, 3 Otto, 199.

Bryant vs. Rich, 106 Mass. 192. Also, 14 How. 36; 17 How. 141; 21 How. 492; 1 Blatch. 571; 6 Wall. 286; 10 Wall. 332; 14 Peters, 65; 2 How. 497.

The application for removal was, therefore, properly denied.

---

### ON THE MERITS.

The nullity of the tax sale is claimed on various grounds affecting the proceedings for both the assessment and collection of the tax. A brief review of some of the principal provisions of the law touching the assessment and collection of taxes will be a useful introduction to the consideration of these questions.

Act No. 42 of 1871 was the law governing the assessment.

The tax collector is required to serve upon the taxpayers printed or written notices, requiring them to make a statement of the objects of taxation owned or controlled by them. Sec. 23.

It appears on the record that in 1871 such a notice was addressed to " L. H. Stafford, Elam & Wemple, agents." There was no such person as L. H. Stafford, so far as the record shows, and Elam & Wemple were not agents for such person. Nevertheless they accepted the notice and made a return thereon, in which they gave a description of the very property now in dispute, and expressly stated that it was the taxable property of the *succession of L. A. Stafford.*

This fact is of the utmost importance, because the taxes for which these lands were sold were those of 1871, 1872 and 1873, and the information as to the ownership was furnished in connection with the assessment of the tax for the first of those years. It left no excuse for any misnomer or misdescription in any subsequent proceedings.

If the owner's name be known, the assessment must designate such name. Sec. 32.

If the property be assessed to some person in a representative capacity, that agency must be noted. Sec. 30.

If the name of the owner be unknown, the word " unknown" shall be entered in the column of names. Sec. 33.

If a valid assessment be made, before the property can be validly sold, the following necessary requisites must be complied with:

1st. There must be a public notice in the manner and during the time required by law.

2d. There must be a failure to pay the tax within ten days after the expiration of the foregoing notice.

3d. The collector must then give ten days written notice to the owner or agent to pay the tax.

4th. After this delay, if not paid, the collector must make a seizure of the property by recording a description of the same with the amount due, in the parish mortgage book.

5th. On the fourth day after such recordation, he must advertise the sale by publication for ten days.

6th. After the expiration of said publication, the collector may sell. See Act 47 of 1873.

Fischel vs. Mercier, 32 An. 704.

The record leaves it doubtful how far the requirements relative to the assessment of the property were complied with. We find in evidence two extracts from the recorded assessments, one of which mentions the property as that of " succession of L. A. Stafford, Elam & Wemple, agents;" the other as that of " L. H. Stafford, Elam & Wemple, agents." Neither of them is dated, nor does the recorder's certificate furnish the date of record.

The delinquent tax-rolls for 1871 and 1872, as found in the record,

return the property and the tax as assessed against "L. H. Stafford, Elam & Wemple, agents."

The evidence altogether points strongly to the conclusion that they were so assessed, at least in some of the years.

If they were so assessed, the assessment thus made, in violation of the plain rules laid down in the law, and which we have quoted, and especially after a return has been made showing the true ownership, would be a patent nullity.

If on the other hand, they were properly assessed as the property of the "succession of L. A. Stafford," then this removed all possible excuse for the errors in the proceedings for sale, which we are about to point out.

The written notices, both as to the State and parish taxes, required to be given to the owner or agent, were addressed to "B. S. Lee, agent for L. H. Stafford of the parish of Red River."

The seizure by recordation describes the property as "seized as the property of L. A. Stafford."

The tax collector's deed recites that the property, fully described, was exposed for sale, "the same having been seized for the payment of taxes due by L. A. Stafford as owner thereof according to the tableau and assessment rolls for the year 1873."

The Auditor's deed, executed after the period allowed for redemption had expired, recites, amongst other statements, that "whereas, the said H. J. Twitchell did. * * seize and sell at public auction the following described·property * * being the property of L. A. Stafford, as per assessment roll, etc.," and "did * * execute an act of sale transferring unto the said Steele and Twitchell, in the name of the State of Louisiana, all the right title and interest of said L. A. Stafford in and to the afore-described property, etc." "Now, therefore, I, Auditor * * do hereby ratify, and confirm * * unto said Steele and Twitchell * * all and singular the afore-described property and all the right, title and interest which the said L. A. Stafford has or had in and to the same."

Applying the literal, strict and technical rules which govern the proceedings of assessors and collectors of taxes, and which, for the validity of tax sales impose a strict conformity to all the requirements of the statute authorizing the sale, the following propositions seem sufficiently clear, viz:

1st. An assessment of property in the name of L. H. Stafford or of L. A. Stafford, is not an assessment in the name of the *owner*, when L. H. Stafford was never owner, and when L. A. Stafford had been dead for ten years, when the property had been vested in his succession, and

when that fact had been formally notified to the proper officers and was ascertainable from the archives of their own offices.

See Sulton vs. Calhoun, 14 An. 209.

2d. A notice addressed to "B. S. Lee, agent of L. H. Stafford," is not a notice to the succession of L. A. Stafford, or to an agent of said succession.

3d. A seizure of property as " the property of L. A. Stafford," is no seizure as against the succession of L. A. Stafford, and the record thereof is no record against said succession.

4th. A sale of property belonging to the succession of L. A. Stafford, as the property of L. A. Stafford and for taxes due by L. A. Stafford as owner, is inoperative against said succession.

See Concy vs. Cummings, 12 An. 748.

5th. A transfer of the right, title and interest of L. A. Stafford in property ten years after his death, operates no divestiture of the title of his succession.

We have thus far given ·the provision of article 118 of the constitution of 1868, directing that tax collectors' deeds of sale " shall be received by courts in evidence as *prima facie* valid sales," the broadest possible effect. We have treated it as if it relieved the tax-purchaser from all other proof, and threw the whole burden on the owner attacking his title. We have held the defendants to no responsibility for failure to establish compliance with any required conditions, and have only signalized those defects which have been made to appear by affirmative proof.

It is quite doubtful whether the constitutional provision is entitled to so broad an effect.

It has been held that where the statute makes the deed "*prima facie* evidence that the requirements of the sale have been complied with," it does not dispense the purchaser from proof that the statutory conditions precedent have been complied with.

Robson vs. Osborn, 13 Texas, 298.

Cooley on Taxation, 355.

So, where the statute made the deed *prima facie* evidence of the regularity of the sale.

Cooley on Tax, 355, and numerous authorities there cited.

So, where the statute made the deed evidence of title in fee-simple.

*Ib.*

It is only where the statute makes the deed "*prima facie* evidence, not only of the regularity of the sale, but of all prior proceedings, and of the title of the purchaser," that it has been given effect to change wholly the burden of proof. *Ib.*

It is not, however, necessary that we should decide this question

in the present case, where it has not been raised or argued, especially as it is one of great importance and far-reaching effect.

It is only necessary to advert briefly to the recognized principles governing the requisites to the validity of tax sales, in order to see that the defects heretofore pointed out and affirmatively established, are fatal to this sale:

The power of the tax collector to sell property, is a naked, special and statutory authority, created by and dependent wholly upon the statute, and subject absolutely to the conditions and limitations imposed by the statute. The power is purely arbitrary. The conditions and limitations placed upon its exercise, are imposed for the protection of adverse interests and as safeguards against abuse. Neither the tax collector nor the courts are allowed to disregard the rules prescribed by the statute, and to sell, or maintain sales, for taxes, made in a manner different from that prescribed by law. This would be the assumption, by the collector or the court, of legislative power, and would enable them to supersede the provisions of the law by substitutes of their own creation.

Chief Justice Marshall long since said: "That no public officer can sell, and convey a good title to, the land of another, unless authorized to do so by express law, is one of those self-evident propositions to which the mind assents without hesitation; and that the person invested with such a power must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this Court."

Thatcher vs. Pervell, 6 Wheat. 119.

Amongst the conditions precedent to the power to sell, those the object of which is to charge the taxpayer with notice actual or constructive of the proceedings, whether in the assessment or collection of taxes, are the ones universally regarded as absolutely mandatory, and of which the most punctilious performance is required.

The deficiencies established in the proceedings under consideration, all relate to provisions of this character.

Actual knowledge, however clearly brought home to the taxpayer, cannot dispense with the necessity of such notices in conformity with the law; and no consent to their waiver can, in any case, be implied.

Amongst the reasons which require a strict construction of, and literal compliance with, the law in the exercise of such powers, is specially assigned the danger of losing their estates, to which innocent persons are exposed. Thus it is said: "Guardians of estates of infants; executors in whom the estate is vested; agents entrusted with the payment of the tax; may fail to pay the tax assessed. These and many other cases often happen, and the estates of innocent persons are thus divested

without their knowledge. The possibility that the power to sell may be abused and injustice done in such cases, ought to require a strict construction of, and literal compliance with, the law."

Blackwell, Tax Titles, p. 50.

See 4 La. 150, 207; 18 La. 514; 14 An. 209.

The instant case is thus seen to be one in which the observance of legal requirements is especially demanded.

It is not necessary that we should proceed further in enumerating the reasons upon which courts have acted in enforcing strict performance of these powers, nor to cite particular cases in which these doctrines have been applied. They are announced in the treatises of elementary writers, and supported by innumerable authorities.

   See Cooley on Taxation, chap. II.

   Blackwell on Tax Titles—*passim*

   Burroughs on Taxation.

We have found no case justifying the maintenance of a tax sale presenting such defects as those here established. · We have found cases innumerable in which such sales have been annulled on much less cogent grounds.

The cases of City vs. Ferguson, 28th An. 240, and of Irwin, Tutor, vs. City, 28th An. 670, are opposed, in principle, to the following cases:

   Concy vs. Cummings, 12 An. 748.

   Sulton vs. Calhoun, 14 An. 209.

   City vs. Heirs of Schmidt, 10 An. 771.

   City vs. Heirs of St. Romes, 28 An. 17

   Delaroderie vs. Hillen, 28 An. 537.

   Thibodaux vs. Keller, 29 An. 508.

   Guidry vs. Broussard, 32 An. 925.

We think the dissenting opinion of Mr. Justice Wyly in the Irwin case is unanswerable.

Those decisions, however, even if maintained, would not cover, or cure, the defects in this case.

### Exceptions.

The exception of defendants of improper joinder is not well taken. Our reasons for overruling it are sufficiently indicated in that part of our opinion relative to the removal of the cause.

A more important exception is based on the failure of the plaintiff to refund, or tender, the taxes in payment of which the price paid by defendants was used.

We think this Court acted hastily and without sufficient consideration, in the case of Barrow vs. Lapene, 30 An. 310, in laying down the broad doctrine that a party to a judicial or tax sale, seeking to annul it, must first tender to the purchaser the reimbursement of the sums paid

34

by him in discharge of his bid, and which enured to the benefit of the attacking party."

We do not find this doctrine, as applicable to tax sales, sustained by authority.

In the absence of a special statute imposing such a condition, it has never been enforced in the other States, although the equitable doctrine referred to, as applied to voluntary and judicial sales, is as well recognized in such States as in this.

Even where such condition has been imposed by statute, grave doubts have been expressed as to its validity, and it has been construed with great strictness.

See Cooley on Taxation, 371 *et seq.*

In the case of Guidry vs. Broussard, 32 An. 926, we said: " We fail to see in this case what principle of equity would require the plaintiff to offer to return an amount which she has never been assessed or adjudged to pay, for which payment has never been demanded of her, and a large portion of which accrued and was charged against her as damages caused by proceedings conducted in utter disregard of her rights and the requirements of the law."

The foregoing is fully applicable to the case at bar; and we think the rights of the defendants are sufficiently protected in allowing them to set up their claims in reconvention, as they have done. If maintained, they would be protected in possession until satisfaction of their claims.

Under a different rule, the plaintiff illegally deprived of property, might be unable to raise the funds to make the tender in advance of judgment restoring his property, while after such judgment, the property would furnish security on which he might obtain the necessary means.

In adjusting the claims between the parties for rents and revenues on the one hand, and for taxes paid and improvements on the other, we encounter the usual conflict of testimony.

Plaintiff claims rents at the rate of $600 per annum from January 6th, 1874, until restoration of possession, amounting at the present time to more than $3600, exclusive of interest.

Defendants claim the taxes paid as price of sale and for subsequent years, amounting, exclusive of interest to..........$1827 43
Value of improvements..................................... 1730 00

Total...............................................$3557 43

The judgment appealed from allowed the plaintiff $516 25 as excess of rents and revenues over taxes and improvements.

The plaintiff has asked in this Court for an amendment of the judg-

ment so as to allow $500 additional for revenues since the date of the judgment.

We are not favored with any statement by the judge *a quo* of the basis on which he founds his judgment.

We are satisfied from the evidence that the value claimed for improvements is grossly exaggerated, and should be largely reduced.

The collector's fees, damages, and costs of advertising, recorder's and surveyor's fees, amounting to $338 15, paid by defendants as part of the price, were not due by the plaintiff, because the property had not been lawfully assessed, and he was not in default. The payment of them could not have been enforced by the State, and did not enure to plaintiff's benefit.

We allow the actual taxes paid, because they were equitably due to the State and parish, and might have been enforced on re-assessment.

According to the defendants' own calculation as formulated in the brief of counsel with proper interest calculations, allowing the plaintiffs rents at the rate of $500 per annum, they claim as due to them at the date of judgment in the lower court........................$1218 78

Deducting the above costs and penalties disallowed, with interest................................................. 410 00

Leaves claimed by defendants ........................... $808 78

This is more than absorbed by the proper reduction, which the evidence justifies, in the exorbitant claim for improvements. Considering that plaintiff is at fault for the long delay permitted to elapse before asserting his rights, we are anxious not to err to the prejudice of defendants, and we have passed over some doubtful items in their accounts.

We feel very certain that in disallowing the prayer of plaintiff for the amendment of the judgment, and in simply affirming it as rendered by the court *a qua*, the defendants will receive ample justice.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed at appellant's costs.

## ON APPLICATION FOR REHEARING.

The opinion of the Court was delivered by

LEVY, J. The appellants in their brief press their application for a rehearing with great ability and earnestness. A careful review of our original opinion and decree has failed to shake or weaken our conviction as to their justice and the soundness of the views expressed and reasons advanced. The arguments of counsel as to the necessity of putting defendants *in mora*, and of tendering the amount of the taxes paid by them, as being indispensable prerequisites to the institution of a suit to set aside the tax sale, have failed to convince us that they were

essential in this case. We think the rule contended for is inapplicable to the instant cause. The principles enunciated by this Court in the case of Guidry vs. Broussard, 32 An. 926, apply fully to this case, and sustain us in the views expressed in our original opinion.

So far as the *dicta* contained in our original opinion herein, on the subject of antecedent tender, go beyond the doctrine of Guidry vs. Broussard, and in conflict with the general principle announced in the cases of Blanton vs. Ludeling, 30 An. 1234, and Miller vs. Montague, 32 An. 1290, it is not necessary to adhere to them in this case, and we defer a final conclusion as to their correctness until presented in a proper case.

Rehearing refused.