## ARGUED AND DETERMINED

IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT MILLEDGEVILLE,

### NOVEMBER TERM, 1847.

---

No. 63.—John Thurmond and others, plaintiffs in error, *vs.* Cuthbert Reese, defendant in error.

[1.] The general rule is, that to entitle a creditor to come into equity to obtain satisfaction out of the equitable estate of his debtor, he should have first pursued his legal remedies to every available extent without being able to obtain satisfaction; yet he may file his bill at once, to set aside fraudulent conveyances made by the defendants in execution with the intent *to delay, hinder, or defraud creditors;* nor is it necessary that there should be a return of " no property to be found" upon the execution, where the *aliunde* proof was full, that all the effects of the defendants were exhausted, except those embraced in the conveyances alleged to be fraudulent.

In Equity. From Jasper Superior Court. Tried before Judge Meriwether. April Term, 1847.

It appears from the record, that several persons were indebted to Cuthbert Reese, the defendant in error, on divers small notes, on which suits were brought and judgments recovered in a justice's court. Pending the cases, the defendants executed mortgages on the whole of their property to John Thurmond, the plaintiff in error. The *fi. fas.* issuing from the magistrate's court in favour of Reese, were levied on the whole of the property, real and personal, belonging to the defendants, except five negroes, which were run off. The proceeds of the sale, amounting to some sixteen hundred dollars, were applied to older executions. Cuthbert Reese, the defendant in error, then filed his bill, alleging the foregoing facts

and charging that the mortgages were without consideration and fraudulent, and made for the express purpose of defeating his debt. The bill stated that these mortgages were recorded, but no precise sum being set forth in them, purporting to be to secure the payment of two thousand dollars "more or less," purchasers were deterred from bidding, not being able to ascertain the extent of the lien. Notice was given of the mortgages on the day of sale. Besides this, Thurmond had obtained the control of two old executions against the defendants, and by the use of these and his mortgages, and by various covinous practices at the sale, he succeeded in buying in the property for sixteen hundred dollars, which was well worth $8,000 or $10,000; and, by seizing this fund with his old *fi. fas.*, he had entirely defeated the complainant in the collection of his just claims. These are the material facts alleged in the bill.

The bill prayed that an account might be taken of the actual indebtedness of the mortgagors to Thurmond, that the land and negroes bought by him might be resold, and that, after discharging his demands, the residue might be appropriated to complainant's debt.

The answer admitted that the property was sold as represented, but denied the fraud alleged, or that the sacrifice in the sale was attributable to the causes assigned in the bill.

A re-sale of the property was decreed by two successive special juries.

During the progress of the appeal trial, Reese tendered in evidence his justice's court executions. This testimony was objected to, on the ground that there was no entry by the proper officer, to wit, the constable, that there was no other property to be found.

The Court below overruled this objection, and to this decision the plaintiffs in error excepted, and assigned the same for error.

F. H. Cone, for the plaintiffs in error.

R. V. Hardeman, for the defendant in error.

Mr. Cone, for the plaintiffs in error, made the following points:
1. That where a person has obtained a judgment in a justice's court, and execution has issued upon such judgment, such judgment creditor cannot come into a court of equity to have conveyances of lands and slaves set aside, until there is an entry upon

Thurmond and others *vs.* Reese.

such execution by the proper officer, that there is no personal property other than slaves to satisfy such execution. *Prince* 506.

2. Before a judgment creditor can come into a court of equity to obtain satisfaction of his judgment, he must sue out his execution and have it returned *nulla bona.* 4 *Johns. Ch. R.* 670, 687, 182; 1 *Paine R.* 535; 9 *Cowen R.* 722; 20 *Johns. R.* 554; 1 *Paige R.* 305; 4 *id.* 209; 1 *P. Wills.* 445.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The facts in this case, so far as they are material to its proper determination, are briefly these:

Several persons were indebted to Cuthbert Reese, the defendant in error, on sundry small notes, on which suits were brought in the justice's court. Pending the cases, the defendants executed mortgages on the whole of their property to John Thurmond. The *fi. fas.* issuing from the magistrate's court in favour of Reese were levied on the whole of the property, real and personal, belonging to the defendants, except five negroes, which were run off. The proceeds of the sale, amounting to some sixteen hundred dollars, were applied to older executions. Cuthbert Reese then filed his bill, alleging the foregoing facts and charging that the mortgages were without consideration and fraudulent, and made for the express purpose of defeating his debt. The bill stated that these mortgages were recorded, but no precise sum being set forth in them, purporting to be to secure the payment of two thousand dollars " more or less," purchasers were deterred from bidding, not being able to ascertain the extent of the lien. Notice was given of the mortgages on the day of sale. Besides this, Thurmond had obtained the control of two old executions against the defendants, and by the use of these and his mortgages, and by various covinous practices at the sale, he succeeded in buying in the property for sixteen hundred dollars, which was well worth $8,000 or $10,000; and by seizing this fund with his old *fi. fas.,* he had entirely defeated the complainant in the collection of his just claims. The bill prays, that an account may be taken of the actual indebtedness of the mortgagors to Thurmond, that the land and negroes bought by him may be re-sold, and that after discharging his demands, the residue be appropriated to complainants' debt.

The answer admits that the property was sold as represented,

but denies the fraud, or that the sacrifice in the sale was attributable to the causes assigned in the bill.

A re-sale of the property has been decreed by two successive special juries.

During the progress of the appeal trial, Reese tendered in evidence his justice's court executions. This testimony was objected to, on the ground that there was no entry by the proper officer, to wit, the constable, that there was no other property to be found. Judge Meriwether overruled this objection, and to this decision the plaintiff in error excepts. And it becomes our duty to revise this opinion, and to reverse it if it be erroneous.

[1.]    We distinctly recognise the rule, that before a creditor can come into a court of equity to subject the *equitable estate* of his debtor to the payment of his demand, he should have pursued his legal remedies to every available extent without being able to obtain satisfaction. And for the most obvious reason; why ask the aid of chancery to enforce *legal* process, while there are *legal assets* liable to seizure and sale?

But this is not the case made by this bill; it is filed to set aside *fraudulent conveyances*, made for the express purpose of defeating the collection of complainant's debt, and to annul a sale in which the property of the debtor was sacrificed by the improper use of these covinous instruments. The bill makes a clear case of *actual* fraud, and *a strong case*. A court of equity has therefore jurisdiction in remedying the fraud, and Cuthbert Reese comes before it, neither appealing to its favour or its discretion, but demanding relief *ex debito justitiæ*.

The case of the *Planters & Mechanics' Bank* vs. *Walker et al.*, 7 *Ala.* 946, is precisely parallel in principle; and the court there say, that it is a misnomer to consider and call the *thing* in controversy, the *equitable estate* of the debtors, for, being *in pari delicto* with those who claim under them, chancery would not entertain a bill in their favour, but leave them to adjust as they could the rights they set up, without lending its aid.

" But the right of the creditor to subject property of his debtor, fraudulently conveyed, is founded in that principle of the common law which enjoins integrity as a virtue paramount to generosity, and denounces fraud as incompatible with honesty and fair dealing."

No doubt the creditor here, as in the case cited, could re-levy his execution, and attack those conveyances at law; but the court

in our sister State assign a very satisfactory reason why equity should retain its concurrent jurisdiction over this subject.

" The right," says Chief Justice Collier, "to disembarrass the title before the property is sold to satisfy the judgment, is valuable to the creditor; if he were compelled to sell it under execution incumbered with a conveyance or lien supposed to be fraudulent, comparatively few would be inclined to purchase, and they at a depreciated price.    This consideration, apart from all others, is a potent argument in favour of the jurisdiction of equity."

The very case under discussion affords a striking illustration of the truth of this doctrine.

Let the judgment be affirmed.