JOHN HAGAN, SURVIVING PARTNER OF THE LATE FIRM OF JOHN
HAGAN & CO., APPELLANT, *v.* LEROY P. WALKER, ADMI-
NISTRATOR OF WILLIAM H. POPE, DECEASED, AND FRANCES
ANN POPE, WIDOW AND GUARDIAN AD LITEM OF WILLIAM
POPE AND JULIA ANN POPE, MINOR CHILDREN OF SAID WIL-
LIAM H. POPE, DECEASED, AND SAMUEL BRECK, ADMINISTRA-
TOR OF LEROY POPE, DECEASED.

A court of equity has jurisdiction of a bill against the administrator of a deceased
debtor and a person to whom real and personal property was conveyed by the de
ceased debtor, for the purpose of defrauding creditors.

In such a case, the court does not exercise an auxiliary jurisdiction to aid legal pro-
cess, and consequently it is not necessary that the creditor should be in a condition
to levy an execution, if the fraudulent obstacle should be removed.

It is proper to make a prior encumbrancer, who holds the legal title, a party to the
bill, in order that the whole title may be sold under the decree; for the purpose of
such a decree, the prior encumbrancer is a necessary party; but the court may order
a sale subject to the encumbrance, without having the prior encumbrancer before it,
and in fit cases it will do so.

If the prior encumbrancer is out of the jurisdiction, or cannot be joined without de-
feating it, it is a fit cause to dispense with his presence, and order a sale subject to
his encumbrance, which will not be affected by the decree.

THIS was an appeal from the District Court of the United
States for the Northern District of Alabama.

The bill was originally filed in the names of John Hagan, of
New Orleans, and a citizen of the State of Louisiana, and
Thomas Barrett, of New Orleans, and a citizen of the State
of Louisiana, formerly commission merchants and partners,
trading under the firm, name, and style of John Hagan & Co.,
complainants, against William H. Pope, of Huntsville, and a
citizen of the State of Alabama, Samuel Breck, of Huntsville,
and a citizen of the State of Alabama, the said Breck being
the administrator of the estate of Leroy Pope, who in his life-
time resided in Huntsville, and was a citizen of the State of
Alabama, and Charles B. Penrose, of Washington city, and a
citizen of the District of Columbia, and successor in office of
Virgil Maxcy, who in his lifetime resided in Washington city,
and was a citizen of the District of Columbia, and Solicitor of
the Treasury of the United States.

The suit was commenced in February, 1846. The plaintiffs
were judgment creditors of Leroy Pope, by a judgment rendered
in April, 1834, upon which an execution in October, 1834, was
returned, " No property found."

The plaintiffs sought to obtain satisfaction of this judgment,
from property which they allege the said Leroy Pope conveyed
fraudulently to his son William H. Pope, the defendant.

This property was conveyed, March, 1834, by Leroy Pope to

3*

William H. Pope, and upon considerations which the plaintiffs alleged to be colorable and inadequate.

The property thus conveyed, was charged to have been the whole estate of the said Leroy, and William H. Pope was charged to have been, before that time, without property, and to have had no means of payment for this.

The plaintiffs alleged that the property was never delivered to the " exclusive possession " of William H. Pope, but " remained as much in the possession of the said Leroy as the said William, and that the said Leroy and William enjoyed the proceeds and profits jointly."

They alleged that William H. Pope, in March, 1834, conveyed the land and slaves to the Solicitor of the Treasury in mortgage, to secure a debt due to the United States by the said Leroy Pope, of $29,290.90, which William H. Pope at that date assumed, and for which he gave his notes; and that at the same date he guaranteed to the United States a debt of $20,000, for which other security had been given to the United States by Leroy Pope.

They averred that the $20,000 thus mentioned, was paid from the securities deposited by Leroy Pope, and that the only debt really incurred by William H. Pope, was that for $29,-290.90. This debt the plaintiffs admitted to be a charge on the property, and they did not contest it. They charged, however, that the securities to the Solicitor of the Treasury were designed by the grantor (William H. Pope) as a fraud upon the creditors of Leroy Pope.

The death of Leroy Pope was alleged to have occurred in 1844, and the appointment of Breck, as administrator, in 1844.

The prayer of the bill was, that the conveyances of Leroy and William H. Pope should be declared null. That, after satisfying the debt of the United States, the remainder of the property should be appropriated to satisfy the debt of the plaintiffs. Process was prayed against William H. Pope and Samuel Breck, administrators of Leroy Pope, and the Solicitor of the Treasury, (Penrose,) a citizen of the District of Columbia.

The defendants, Breck and Pope, demurred to the bill; the demurrer was allowed by the District Court, and the bill was dismissed.

An appeal from this decree of dismissal brought the case up to this court. It was argued by *Mr. Johnson* for the appellant, and *Mr. J. A. Campbell* for the appellees.

As the demurrer was sustained in the court below, the points before this court to be argued were, the reasons for dismissing the bill and sustaining the demurrer. These were stated by Mr. Campbell, as follows, and it is sufficient to state the points and authorities.

I. That the jurisdiction of the Court of Chancery to set aside conveyances executed by a failing debtor to defraud creditors, is not an original and independent jurisdiction of that court, but is an auxiliary and limited jurisdiction. The creditor must show that the remedies at law have been exhausted — that there is an obstruction which can only be removed by the aid of the Court of Chancery, and that his cause is so situated at law, that, upon the interposition of the court in the manner sought, he could immediately enforce the right he claims. 3 Mylne & Craig, 407; 11 S. & M. 366; 8 Barb. N. Y. R. 593; 7 Ala. 319, 928; 1 Hill's So. Car. R. 297, 307; 20 Johns. 554; 2 Rand. 384; 1 Paige, 388.

II. The bill shows in this case three facts sufficient to have determined the lien of the judgment against Leroy Pope, under the laws of the United States, and the State of Alabama.

Five years had elapsed from the 3d of March, 1839, before the filing of the bill. The act of Congress of that date determined the lien. 5 Stat. at Large, 338.

Ten years had elapsed from the judgment and return of the last execution. Clay's Digest, 206, 207, § 28, 29; 5 Ala. R. 188; 18 Ala. 675; 19 Ala. 207.

The death of Leroy Pope put an end to the lien of the judgment and the right to issue execution. Bush *v.* Jones, 13 Ala. R. 167.

III. The plaintiff sets forth the conveyance of Leroy Pope to William H. Pope, to have taken place in 1834. He does not aver that the conveyance was upon any trust for Leroy Pope, nor does he aver that any title remained in Leroy Pope. The bar of the statute of limitations of six years will apply to the personal property. 7 Yerger, 222; 1 Bailey, Ch. R. 228; 1 Humph. 335; 1 Hill, Ch. R. 113; 8 Yerger, 145; 7 Wheat. 60, 117, &c.; Peck's Rep. 41.

IV. The Court of Chancery, except in cases of express trusts and fraud, follow the courts of law in the application of the statute of limitation.

In this case no trusts in favor of Leroy Pope are charged to exist; nor is there an averment that the plaintiff did not discover till within six years the fraudulent purpose and consideration upon which they were made.

In the absence of such averments, the court will presume the possession to have been consistent with the legal title, and the bar of the statute will run from the date of the title deeds. 4 How. S. C. R. 503, 560; 7 How. 234; 10 Wheat. 168.

In reference to personal property, the limitation upon personal actions is adopted in equity. 1 Dev. & B. Eq. 95; 5 Ala. R. 90; 508; 3 Ala. R. 756.

V. No averment is made by the plaintiff showing the condition of the estate of Leroy Pope, after his death. The bill contains an averment, that the crops from the lands and other profits of the estate have been large, and that Leroy Pope enjoyed them till his death.

There is nothing to show that ample means are not to be found in the hands of the administrator to pay the debt. No presentment to, nor demand of, the administrator is averred, and no refusal to pay on his part shown. A bill must show this, or it is fatally defective. 3 Ham. 287; 5 Har. & J. 381; 5 Gill & J. 432; 2 McCord's Ch. R. 416, 169.

VI. The court had no jurisdiction of the cause. The Solicitor of the Treasury, a citizen of the District of Columbia, is made a party. The prayer of the bill is to cancel deeds made to him, and to appropriate property in which he has a legal right. 3 Cranch, 267; 14 Pet. 60, 65.

Mr. Justice CURTIS delivered the opinion of the court.

John Hagan & Co. filed their bill in the District Court of the United States for the Northern District of Alabama, in which they state that, in the year 1834, they recovered a judgment at law in that court against Leroy Pope, for upwards of seven thousand dollars, which is wholly unsatisfied; that a writ of *fieri facias*, running against the lands, goods, and body of the debtor, was regularly issued, and, on the 10th day of October, 1834, was returned *nulla bona;* and from that time to the filing of the bill, there has not been, in that district or elsewhere, any property of Leroy Pope out of which the judgment-debt could be collected, except certain property afterwards mentioned. The bill further alleges that, about a month before the complainants recovered their judgment at law, Leroy Pope, intending to defraud the complainants, and to hinder them from obtaining payment, made conveyances, both of real and personal estate, to a large amount, to his son, William H. Pope, who was a party to the fraud, and is made a defendant in the bill; that Leroy Pope died in the year 1844, and Samuel Breck, who was appointed his administrator, is also a party defendant. The complainants are averred to be citizens of Louisiana, and William H. Pope and the administrator citizens of Alabama. The defendants having demurred to the bill, it was dismissed by the District Court, and the complainant, who is the surviving partner, appealed to this court.

The principal ground upon which the demurrer has been rested in this court is, that the bill does not show that the complainants are entitled to equitable relief. The argument is, that the jurisdiction of a court of equity, to aid a judgment-creditor,

by removing a fraudulent encumbrance on the property of his debtor, is ancillary merely; that this aid is not given unless the creditor has obtained a lien at law upon the specific property sought for, if that be legal property upon which an execution could be levied; or if it be equitable assets, not liable to a levy by execution; that the creditor must have exhausted his legal remedy, by a return of *nulla bona* on his execution, and must also be in a condition to proceed at once at law to enforce his right, if the obstacle should be removed. That if his judgment has become ineffectual to entitle him to an execution, so that he could not levy, even if the assets were legal, and not subject to any fraudulent encumbrance, equity will not exert itself to subject equitable property to the payment of his judgment. And it is further argued, that, according to the local law of Alabama, governing these proceedings at law, the judgment-creditors had lost their lien on the personal estate of the debtor, because they had suffered more than one term to elapse without issuing an *alias* execution; and upon the real estate, because more than ten years elapsed after the return of their last execution, and before this bill was filed; and that the lien, both upon the personal and real estate, was destroyed by the death of Leroy Pope, which suspended the right to issue an execution. That, by reason of his death and the lapse of more than ten years, the right to issue an execution being suspended, equity would not subject equitable assets to the payment of this judgment.

It does not distinctly appear whether the property sought to be reached by this bill is equitable or legal. There is reason to suppose, from some allegations in the bill, that a part or the whole of the property was conveyed by Leroy Pope, in 1831, to Louis McLane, as Secretary of the Treasury, to secure a debt due to the United States by a deed of trust, and this conveyance is not impeached. If it embraced the whole or any part of the property now in question, only an equitable estate therein was left in Leroy Pope. The bill is not distinct in its allegations on this subject; but we do not deem it necessary that it should be; because we are of opinion that this case is not to be treated as an application by a judgment-creditor for the exercise of the ancillary jurisdiction of the court, to aid him in executing legal process, but comes under a head of original jurisdiction in equity. It is a bill by a creditor of a deceased debtor, against the administrator and a party who is fraudulently holding all the property of the deceased, which in equity should be applied to the payment of this debt, and the bill prays that the debt may be paid out of this fund. That a single creditor may maintain a bill against an administrator of a deceased

debtor, for a discovery of assets and the payment of his debt, there can be no doubt. That, in some cases, he may join with the administrator a third person, who is in possession of property which is amenable to the payment of the debt, is also clear. The instances in which it has been actually held that such third person might be joined, are chiefly cases of collusion between the administrator and the third person possessed of assets, insolvency of the administrator, and where the third person was the surviving partner of the deceased. Utterson *v.* Mair, 2 Ves. Jr. 95; Alsager *v.* Rowley, 6 Ves. 748; Burroughs *v.* Elton, 11 Ves. 29; Gedge *v.* Traill, 1 Russ. & M. 281; Long *v.* Majestre, 1 Johns. Ch. Rep. 306. But it will be found that the equitable right of the creditor to join a third person, and have a discovery and an appropriation of assets held by him, has never been limited to these particular cases.

For, while it is generally agreed that some special case must be made, it is also declared in all the cases, that what is to constitute it has not been limited by any precise and rigid rule. In Holland *v.* Prior, (1 My. & K. 240,) Lord Brougham applied the rule to the case of a representative of a deceased representative, without any suggestion of collusion between him and the present representative. In Simpson *v.* Vaughn, (2 Atk. 33,) Lord Hardwicke said: " It has been said at the bar, that you may make any person a defendant that you apprehend has possessed himself of assets upon which you have a lien. But this certainly cannot be laid down as a general rule; for it would be of dangerous consequence to insist that you can make any person a defendant who has assets, unless you can show to the court he denies that he has assets, or applies them improperly." Considering, then, that some special and sufficient reasons must be shown for proceeding against a third person, jointly with the administrator, the inquiry is, whether this bill does not contain those reasons; and we are of opinion it does.

It appears, from the statements in the bill, that William H. Pope is in possession of all the assets of the deceased debtor, both real and personal, holding them under conveyances made to him by the deceased, absolute in form, but accompanied by secret trusts in favor of the grantor, designed to defraud this particular creditor, and prevent him from obtaining payment of his judgment, and that this fraudulent design has thus far been successfully executed.

Now these conveyances are not only valid on their face, but they are really valid as between the parties; and though they are void as against creditors, and the property, both at law and in equity, is subject to the payment of the debts of the deceased, yet the embarrassments attending any attempt by the

administrator to possess himself even of that part of these assets, which were personalty, at law would certainly be great, and perhaps insuperable. 2 Rand. Rep. 384 ; Martin v. Root, 17 Mass. Rep. 228. It is true he is the representative of creditors, as well as of the next of kin, and in the former capacity might be able to make good his claim to a sufficient amount of these personal assets to enable him to pay the debts. Holland v. Cruft, 20 Pick. 321. But the impracticability of taking an account of the debts at law, and proportioning the recovery to the amount required to pay them, would render a resort to equity indispensable to do entire justice between all parties, even if the assets were legal in their nature. If this bill had contained an allegation that the administrator had been requested to sue, and had refused, the case would be free from all doubt ; and, upon the facts averred in the bill, we do not think such a request necessary ; because it does appear that about two years elapsed after the death of Leroy Pope before this bill was filed, and the administrator took no step to reduce these assets to possession; because, when this bill was filed, he resists it by a demurrer, relying on the statute of limitations ; because it must be admitted to have been doubtful how far he had a remedy, without the concurrence of any creditor ; and chiefly, because there is no danger of interfering with the due course of administrations, or taking from administrators their proper control over suits for the recovery of assets, by holding that a creditor may file a bill against the administrator and the fraudulent grantee of deceased debtor, to subject the property fraudulently conveyed to the payment of the debt. It comes within the case put by Lord Hardwicke ; for here this specific property is amenable to the claim of this creditor, and in the sense in which he employs the word, the creditor had a lien upon these assets ; and it does appear to the court, that the party holding them both denies that they are assets and applies them improperly, for he claims them as his own, and is endeavoring to defeat a just creditor by an assertion of a title invalid as against him.

In this view of the case, it is not essential that the creditor cannot proceed at law until after a revival of the judgment by a *scire facias*. In Burroughs v. Elfon, (11 Ves. 36 – 7,) Lord Eldon had occasion to consider the force of this objection in a similar case. It was a bill to reach real assets in the hands of a surviving partner. The complainant's judgment was upwards of seventeen years old, and no step had been taken to revive it against the administrator or the heir. His decision, in accordance with two previous cases to which he refers, was, that such a creditor could sustain the bill, though it might be necessary to direct him to proceed at law to revive his judgment.

It has been argued, that the bill does not show that there are not other assets in the hands of the administrator sufficient to pay this debt, and contains no allegation that the administrator was ever requested to pay it. But the bill does expressly aver, that, aside from the property fraudulently conveyed, there is not, any where, any property of Leroy Pope, out of which the debt could be collected; and, although it states that the fraudulent grantor and grantee both remained in possession, and took the crops jointly, and that these crops were of great value, yet, inasmuch as between themselves the crops belonged to the grantee, and as it was the object of the conveyances to prevent them from being applied to the benefit of creditors, we are of opinion there is no presumption that any thing arising from this joint possession ever came to the hands of the administrator, and, therefore, that a demand on him would have been a vain act, which the creditor was not compelled to do.

One other ground on which the demurrer has been rested, requires notice. The bill alleges that, after the fraudulent conveyances to William H. Pope had been made, he mortgaged the property to Virgil Maxcy, as Solicitor of the Treasury of the United States, to secure the debt of Leroy Pope which William H. Pope assumed to pay, and it avers that this debt has been in part paid by means described in the bill. Virgil Maxcy and, subsequently when he went out of office, his successor, Charles B. Penrose, were named as parties to the bill, but they were out of the jurisdiction, no process was served on either of them, and neither ever appeared or answered. The bill prays that William H. Pope may be compelled to pay to the United States the balance due to them, out of the property in question, and that the residue may be subjected to the payment of the complainant's debt, and for other and further relief.

Under the act of Congress of the 28th of February, 1839, (5 Stat. at Large, 321, § 1,) it does not defeat the jurisdiction of the court that a person named as defendant is not an inhabitant of or found within the district where the suit is brought; the court may still adjudicate between the parties who are properly before it, and the absent parties are not to be concluded or affected by the decree.

It is obvious, however, that there may be cases in which the court cannot adjudicate between the parties who are regularly before it, for the reason that it cannot bind those who are absent. Where no relief can be given without taking an account between an absent party and one before the court, though the defect of parties may not defeat the jurisdiction, strictly speaking, yet the court will make no decree in favor of the complainant.

The case before us is not one of this character; for although the whole of the relief specially prayed for cannot be granted in the particular mode there indicated, because the United States not being a party, no account can be taken of the debt due to them from Leroy Pope or William H. Pope, yet, subject to the encumbrance of this debt, and without affecting it in any manner, the property may be appropriated to the payment of the complainant's debt.

It is true, that in Finley v. The Bank of the United States, (11 Wheat. R. 306,) which was a bill to foreclose a mortgage by sale, Chief Justice Marshall says: "It cannot be doubted that the prior mortgagee ought regularly to-have been a party defendant, and that had the existence of his mortgage been known to the court, no decree ought to have been pronounced in the cause until he was introduced into it." But it could not have been intended by this to say, that a prior encumbrancer was absolutely a necessary party without whose presence no decree of sale could be made, because in that very case the court refused to treat the decree as erroneous, after it had been executed.

In Delabere v. Norwood, (3 Swanst. R. 144, n.) in a bill to obtain payment of an annuity charged on land, prior annuitants were held not to be necessary parties. In Rose v. Page, (2 Sim. 471,) the same rule was applied to a prior mortgagee; and in Wakeman v. Grover, (4 Paige, R. 23,) and Rundell v. Marquis of Donegal, (1 Hogan, 308,) and Post v. Mackall, (3 Bland, 495,) to prior judgment creditors; and in Parker v. Fuller, (1 Russ. & My. 656,) persons having encumbrances on real property, which the bill sought to subject to the payment of debts of the deceased owner, were held not to be necessary parties to the bill. See also Hoxie v. Carr, 1 Sum. R. 173; Calvert on Parties, 128.

On the other hand there are cases in which it has been declared that all encumbrancers are necessary parties. Many are collected in Story's Eq. Pl. 178, n. But we consider the true rule to be, that, where it is the object of the bill to procure a sale of the land, and the prior encumbrancer holds the legal title, and his debt is payable, it is proper to make him a party in order that a sale may be made of the whole title. In this sense, and for this purpose, he may be correctly said to be a necessary party, that is, necessary to such a decree. But it is in the power of the court to order a sale subject to the prior encumbrance, a power which it will exercise in fit cases. And when the prior encumbrancer is not subject to the jurisdiction of the court, or cannot be joined without defeating its jurisdiction, and the validity of the encumbrance is admitted, it is fit

to dispense with his being made a party. To such a case the 47th rule for the equity practice of the Circuit Courts of the United States is applicable, and by force of it, this cause may proceed without making the United States, or the Solicitor of the Treasury a party to the decree.

The decree of the District Court must be reversed, and the case remanded, with directions to overrule the demurrer and order the defendants, other than the representative of the United States, to answer the bill.

### *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Northern District of Alabama, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed, that the decree of the said District Court in this cause be, and the same is hereby, reversed with costs, and that this cause be, and the same is hereby, remanded to the said District Court, with directions to overrule the demurrer, and to order the defendants, other than the representative of the United States, to answer the bill.