RYAN, APPELLANT, *v.* SPIETH ET AL., RESPONDENTS.

[Submitted March 19, 1896. Decided March 23, 1896.]

CREDITOR'S BILL—*Pleading—Issuance of execution.*—A complaint in equity to reach and have applied to a judgment, property of the judgment debtor, alleged to be fraudulently concealed, which shows that there is no property subject to execution and what has become of it, need not also allege as a prerequisite to equitable relief, that an execution was issued and returned unsatisfied.

SAME—*Pleading—Presentation of claim to administrator.*—A creditor's bill to reach funds of an estate, alleged to have been fraudulently secreted and to require the administrator to personally account therefor in equity, need not allege that the plaintiff's claim was first presented to the administrator for allowance under the rules of probate practice.

SAME—*Same—Ownership of judgment.*—The plaintiff in a creditor's suit must allege that he is the owner of the judgment and that it is unsatisfied.

APPEAL—*Remand—Amendment allowed.*—In an equity action where the complaint defectively states what may be a good cause of action and a demurrer to the complaint is sustained for ambiguity, and the plaintiff's counsel elects to stand on the complaint, but after an appeal is taken is disbarred from practice, the supreme court under such circumstances, while approving the ruling of the lower court, will remand the case with leave to amend.

*Appeal from Ninth Judicial District, Gallatin County.*

CREDITOR'S BILL. Defendant's demurrer was sustained by ARMSTRONG, J. Remanded.

Statement of the case by the justice delivering the opinion.

This is an action in equity, seeking to reach, and have applied to a judgment, assets and property alleged to be fraudulently disposed of and concealed. A demurrer to the complaint was sustained, and judgment accordingly entered for the defendants. Plaintiff appeals.

The demurrer was upon two grounds : (1) That the complaint did not set forth facts sufficient to constitute a cause of action; and (2) that it was ambiguous, uncertain and unintelligible. The complaint is extremely voluminous, and the demurrer equally so. Under the view that we take of this case, and disposition we intend to make of it, it will not be necessary to state the facts at very great length.

It appears by the complaint that on May 5, 1888, and for a long time prior thereto, Jacob F. Spieth and Charles Krug were partners in the brewing and saloon business. Krug died May 7, 1888, intestate. Spieth died April 10, 1892, intestate. J. P. Martin, one of the defendants is administrator of Krug's estate, and Barbara Spieth, the other defendant, is administratrix of Spieth's estate. The plaintiff, on December 29, 1888, recovered judgment against Jacob F. Spieth, the sole surviving partner of the firm of Spieth & Krug, for $9,026.94,—a judgment in effect against the partnership. Upon the death of Krug, Spieth retained possession of all the firm property, and operated the business and collected all accounts due the firm. The complaint then contains allegations in great detail as to fraudulent conspiracies between Jacob Spieth and Barbara, his wife, to get possession of all the assets of the firm, and put them into the possession of Barbara Spieth for the benefit of her and her husband, and for the purpose of defrauding the creditors of the firm. This conspiracy originated some time within two years before the death of Krug, in 1888, and continued its operations until near the time of the death of Spieth, April 10, 1892.

The complaint states that the firm, in May, 1888, had real and personal property to the value of $40,000, while they owed $25,000. It also states that both the Spieth and Krug estates were absolutely insolvent, and no assets whatever were found, and that neither estate paid even the costs of administration. The complaint traces many items of assets of the firm through Jacob Spieth to his wife, Barbara, and states many investments which Barbara had made of money so obtained. For the purpose of this decision it does not seem to be necessary to state the facts any more fully.

*Hartman & Hartman*, for Appellant.

*Luce & Luce*, for Respondents.

DE WITT, J.—One ground urged for sustaining the demurrer is that the complaint does not state that an execution upon the original judgment of Ryan against the partnership of Spieth & Krug was ever issued and returned unsatisfied. One of the allegations of the complaint is as follows: "That to issue an execution in this case, and to have it returned, would be productive of no good, and would only incur costs without result; that there is no property of Chas. Krug, Jacob F. Spieth, or Spieth & Krug subject to execution, or that can be found."

Furthermore, it appears by the complaint, that the partnership of Spieth & Krug, and the individual estates of the two partners, were absolutely insolvent, and that their effects were eaten up by other creditors, and by the alleged embezzlements of Barbara Spieth. There could be no plainer case of the absolute uselessness of an execution. In the case of *Merchants' National Bank* v. *Greenhood*, 16 Mont. 394, we did not decide whether the issuance of an execution, and its return unsatisfied, were necessary to support a creditors' bill; but we quoted with approval the following from the case of *Case* v. *Beauregard* 101 U. S. 688.

"It is no doubt generally true that a creditor's bill to subject his debtor's interests in property to the payment of the debt must show that all remedy at law had been exhausted. And, generally, it must be averred that judgment has been recovered from the debt, that execution has been issued, and that it has been returned *nulla bona*. The reason is that, until such a showing is made, it does not appear in most cases that resort to a court of equity is necessary. Or, in other words, that a creditor is remediless at law. In some cases, also, such an averment is necessary to show that the creditor has a lien upon the property he seeks to subject to the payment of his demand. The rule is a familiar one that a court

of equity will not entertain a case for relief where the complainant has an adequate legal remedy.  The complaining party must, therefore, show that he has done all that he could do at law to obtain his rights.  But, after all, the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means of proof.  The necessity of resort to a court of equity may be made otherwise to appear.  Accordingly, the rule, though general, is not without many exceptions.  Neither law nor equity requires a meaningless form.  *'Bona sed impossibilia non cogit lex.'* It has been decided that, where it appears by the bill that the debtor is insolvent, and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference.  *Turner* v. *Adams,* 46 Mo. 95; *Postlewait* v. *Howes,* 3 Iowa, 365; *Bank* v. *Harvey,* 16 Iowa, 141; *Botsford* v. *Beers,* 11 Conn. 569; *Payne* v. *Sheldon,* 63 Barb. 169.  This is certainly true where the creditor has a lien or a trust in his favor.  So it has been held that a creditor, without having first obtained a judgment at law, may come into a court of equity to set aside fraudulent conveyances of his debtor, made for the purpose of hindering and delaying creditors, and to subject the property to the payment of the debt due him.  *Thurmond* v. *Reese,* 3 Ga. 449; *Cornell* v. *Radway,* 22 Wis. 251; *Sanderson* v. *Stockdale,* 11 Md. 563.  *  *  *  The foundation upon which these and many other similar cases rest is that judgments and fruitless executions are not necessary to show that the creditor has no adequate legal remedy.  *  *  *  But, without pursuing this subject further, it may be said that whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity, without exhausting legal processes or remedies.  (*Tappan* v. *Evans,* 11 N. H. 311; *Holt* v. *Bancroft,* 30 Ala. 193.)''

In the case at bar it appears by the complaint that there is no property subject to execution as clearly, and indeed more clearly and fully, than it would appear by the

return of an execution. The return of an execution would simply show that the sheriff had not found property. This complaint shows more than that. It makes it appear not only that there is not property subject to execution, but it states in very great detail why there is not such property, and what has become of the property which should have been subject to an execution. We are of opinion that under such facts and circumstances as here disclosed the better rule is that it need not be pleaded or proved that the useless ceremony of the issuing of an execution has been resorted to. The complaint was, therefore, not defective in this respect.

The defendants further contend that the complaint is fatally defective in that it does not appear that plaintiff's claim against the firm of Spieth & Krug has been presented to the administratrix of the Spieth estate under the rule of probate practice. But in this action no relief is sought against the administratrix. Barbara Spieth is named as administratrix in the title of the case, and alleged to be such in the body of the complaint, but the relief sought against her is strictly personal. She is charged with embezzlement and conversion of the funds of the estate, and the prayer is that she be made to account for them in equity. The question is not one of a claim to be presented to an administrator for an allowance, but is rather an effort to require a person who has converted the funds of an estate to account to a creditor of the estate. (*Krueger* v. *Spieth,* 8 Mont. at page 489.)

Again, appellant contends that the complaint is defective in that it does not state that the plaintiff is the owner of the judgment, and that the same is unsatisfied. We are of opinion that in this respect the complaint is defective. Certainly, the plaintiff could not require an accounting from Mrs. Spieth for funds of the estate embezzled by her, unless the plaintiff were a creditor of the estate. She would be obliged to prove this upon the trial as a material element to support her action. She should, therefore, allege it. The pleading that the plaintiff had once obtained a judgment is not pleading that she still owns it or holds it, and that the same is unpaid. In this respect the demurrer must be sustained.

Another ground of demurrer is that the complaint is ambiguous, uncertain and unintelligible, and the demurrer then goes on to point out in detail wherein the ambiguity, uncertainty and unintelligibility exists. We are satisfied that in some of these respects this portion of the demurrer is also good. In one part of the complaint it is stated that in May, 1888, Spieth & Krug had $40,000 in property, and owed $25,000; and in another place it is stated that both parties were insolvent for five years before 1892. In other respects the complaint is very inartistically drawn, and probably uncertain, ambiguous and unintelligible, within the meaning of those words as used in the construction of pleadings. But we shall not go into details as to these defects in the complaint, for the reason that the counsel who now appears for the appellant practically confesses the weakness of the pleading in these respects. If he were the same counsel as the one who drew the complaint, we should feel disposed to show him little, if any, consideration, for the reason that he expressly elected to stand upon the complaint after the demurrer had been sustained, and after these defects had thus been pointed out to him. But the present counsel for the appellant is in a position which is somewhat unusual. The original counsel was Mr. E. P. Cadwell, who, after this appeal was taken, was disbarred from practice in this court for dishonorable and unprofessional conduct. The present counsel, Mr. Hartman, was afterwards substituted. The complaint appears to be one where there is not a statement of a defective cause of action, but a defective statement of what may be a good cause of action. This is an equity action in an equity court. There is very much in the complaint appealing to the conscience of a chancellor, and arousing the belief that plaintiff, if her allegations be true, and be clearly set forth, has good cause to appeal to equity. It would seem to be a harsh ruling to wholly deprive her of equity relief, upon the very threshold of the court, by reason of a defective statement of her cause of action by a counselor whose career has been such as that of him who commenced this action.

Therefore, while we must approve the ruling of the district

court, and sustain the demurrer for the reasons above stated, and while we might, under some other circumstances, finally affirm the judgment, we shall in this instance remand the case to the district court, with directions that if the plaintiff, within 30 days after the filing of the remittitur in the district court, tenders an amended complaint, free from the objections existing as to the present one, the judgment shall be set aside, and the action proceeded with; otherwise the present judgment will be affirmed. (*Ledlie* v. *Wallen*, 17 Mont. 150.) Her counsel who appeared in court, having stated that he should not have drawn a pleading containing the ambiguities of this complaint, may then have opportunity to prepare a complaint which is free from the objections which he himself concedes exists in this one. Under the circumstances in this case the costs will be paid by the appellant.

*Remanded.*

HUNT, J., concurs.