## OWEN v. GENERAL AMERICAN OIL CO. et al.

No. 20944. Opinion Filed Sept. 22, 1931.

Thomas D. Lyons and Biddison, Campbell, Biddison & Cantrell, for plaintiff in error.

Kleinschmidt & Johnson, West, Gibson, Sherman, Davidson & Hull, and Samuel A. Boorstin, for defendants in error.

KORNEGAY, J. This cause comes here by petition in error on case-made. It originated in the district court of Tulsa county by the filing of a petition therein on the 13th day of February, 1929, by the plaintiff in error, Robert L. Owen, against the General American Oil Company, Alfred E. Aaronson, Cynthia T. Aaronson, executrix of the estate of L. E. Z. Aaronson, deceased, and Cynthia T. Aaronson and Millicent Aaronson, defendants in error.

From the recitals in the petition, it appears that the suit was on a note signed by the General American Oil Company, a corporation, by Cornelius Kroll, as president, and on the back of the note there appears the following:

"(Signed) Lionel E. Z. Aaronson,
"Alfred E. Aaronson"

—the first being the husband of Cynthia T. Aaronson, since deceased, and the said Cynthia T. Aaronson being his executrix, and Millicent E. Aaronson being the wife of Alfred E. Aaronson.

The petition, as originally drawn, can be found on page 3 of the case-made, and ap-

pears to be on two notes, one for $10,000, dated December 1, 1923, and due in 4 months, and the second one being for $8,750, dated December 1, 1923, due in four months, signed in the same manner as the first one as heretofore indicated. Each note drew interest at 8 per cent. There was an averment that Lionel E. Z. Aaronson had died, and that Cynthia T. Aaronson was his executrix, appointed by the county court of Tulsa county, and that the claim on both of the notes had been presented and allowed, both by the executrix and by the court, in the county court of Tulsa county, Okla., the order of allowance being as follows:

"Allowed: As of December 1, 1925

"This the 16th day of March, 1925.

"(Signed) Cynthia T. Aaronson,

"Executrix.

"Allowed: This 31st day of March, 1925.

"(Signed) John A. Boyd, County Judge."

Attached to the petition was a schedule of property listed by the decedent, L. E. Z. Aaronson, as being his own, and signed by Lionel E. Z. Aaronson, showing total assets of $2,006,714.18, and net worth as $1,241,075.65, dated July 11, 1921. There was an allegation of the insolvency of the estate of L. E. Z. Aaronson, and the insolvency of the other maker of the note, Alfred E. Aaronson, and the holding in trust, by Cynthia T. Aaronson, for L. E. Z. Aaronson in his lifetime, of certain properties set out in the schedule attached to the petition. There was further allegation that Millicent Aaronson, in like manner, held some of the property. The charging portion of the petition, with reference to the holding of the property, can be found on page 14 of the case-made, and is as follows:

"Plaintiff says that L. E. Z. Aaronson and Alfred E. Aaronson were solvent at the time of the making of said note, but that plaintiff has been advised by Alfred E. Aaronson, as representative of the executrix of the estate of L. E. Z. Aaronson, deceased, that said estate is insolvent, and that said Alfred E. Aaronson is insolvent.

"Plaintiff further says that Cynthia T. Aaronson is the widow of L. E. Z. Aaronson, deceased, and the executrix of the will of said decedent and of his estate; that Millicent Aaronson is now, and has been at all times hereinbefore and hereinafter mentioned, the wife of Alfred E. Aaronson, defendant herein.

"Plaintiff says that at the time L. E. Z. Aaronson and Alfred E. Aaronson made said note and affixed their signatures thereon, that L. E. Z. Aaronson was the owner of various properties, as set out in the list of properties attached to this petition and marked 'Schedule No. 1,' said properties being located in the city of Tulsa, county of Tulsa, state of Oklahoma.

"Plaintiff further says, referring specifically to Item 1 of Schedule No. 1, being property located at the corner of Sixth street and Boulder avenue, Tulsa, Okla., that L. E. Z. Aaronson purchased the same during his lifetime from a Methodist Church body, described as the grantor of a certain conveyance dated March 23, 1920, in which the First Methodist Episcopal Church is grantor and Cynthia T. Aaronson is grantee, said premises having been conveyed by warranty deed. Plaintiff specifically alleges that said premises were in truth and fact conveyed by warranty deed. Plaintiff specifically alleges that said premises were in truth and fact conveyed to Cynthia T. Aaronson as trustee for L. E. Z. Aaronson, the true owner thereof, and that Cynthia T. Aaronson at all times has held the bare legal title of said premises; that L. E. Z. Aaronson was seized of the same in fee simple at the time of his death, and that said property is in truth and fact the property of the estate of Lionel E. Z. Aaronson and subject to the claims of his creditors. That this plaintiff hereby files this, his creditor's suit, for the reclamation of said property and the restoration thereof to said estate, and claims a first lien thereon for the entire amount of the indebtedness of said estate to him.

"Said plaintiff further says that certain of the other tracts mentioned in Schedule No. 1 were taken in like manner in trust by Cynthia T. Aaronson, although owned and held in truth and fact by L. E. Z. Aaronson, and that other of said tracts were taken by Millicent Aaronson, the wife of Alfred E. Aaronson, as trustee for L. E. Z. Aaronson.

"Plaintiff further says that all of said property was owned by L. E. Z. Aaronson at the time of his death, and that prior to the time of his death, L. E. Z. Aaronson, with the knowledge and consent of Cynthia T. Aaronson and Millicent Aaronson, stated in writing that he was the fee-simple owner of said premises and held out and represented publicly and to the world, with the knowledge and consent of said Cynthia T. Aaronson and Millicent Aaronson, that he was the fee-simple owner of said premises, and in writing, over his signature, listed said premises among his assets."

The plaintiff denominated the action a creditor's suit, and claimed a first lien upon the property on behalf of the plaintiff below, and asked the court to enforce it.

An amendment was made to the petition by leave of court, entered on the 14th of March, 1929, and it is found on page 28 of the case-made, and the amendment, omitting the caption, is as follows:

"Amendment to first cause of action:

"Comes now the plaintiff, and for amendment to his first cause of action, alleges that the defendant, Cynthia T. Aaronson, executrix of the estate of L. E. Z. Aaronson, and the defendant, Cynthia T. Aaronson are one and the same person, and that Cynthia T. Aaronson was the wife of L. E. Z. Aaronson, decedent, during his lifetime and that the property was conveyed to her during the lifetime of said decedent in fraud of creditors as alleged in plaintiff's original petition, and that she holds said property, as alleged in plaintiff's original petition, at this time; that said executrix has refused to bring suit for the recovery of said property for the estate of the decedent, that plaintiff sues on behalf of said estate and on behalf of all creditors of said estate having allowed claims and on behalf of said executrix as plaintiff, and that plaintiff prays leave of the court in equity to maintain said action.

"Wherefore, plaintiff prays judgment on his first cause of action as is in his original petition demanded.

"Amendment to second cause of action:

"Comes now the plaintiff and for amendment to his second cause of action alleges that the defendant, Cynthia T. Aaronson, executrix of the estate of L. E. Z. Aaronson, and the defendant, Cynthia T. Aaronson, are one and the same person, and that Cynthia T. Aaronson was the wife of L. E. Z. Aaronson, decedent, during his lifetime, and that the property was conveyed to her during the lifetime of said decedent in fraud of creditors as alleged in plaintiff's original petition, at this time; that said executrix has refused to bring suit for the recovery of said property for the estate of the decedent; that plaintiff sues on behalf of said estate, and on behalf of all creditors of said estate having allowed claims and on behalf of said executrix as plaintiff, and that plaintiff prays leave of the court in equity to maintain this said action.

"Wherefore, plaintiff prays judgment on his second cause of action as is in his original petition demanded, and prays for relief as in said original petition demanded."

On the 10th of April, 1929, a motion was made to strike by the defendants Alfred E. Aaronson, Cynthia T. Aaronson, executrix of the estate of L. E. Z. Aaronson, deceased, from the amended petition, as follows:

"* * * all that part beginning with the last paragraph on page four thereof with the words, 'plaintiff further says that Cynthia T. Aaronson is the widow of L. E. Z. Aaronson, deceased,' to and including the last paragraph before the prayer to the first cause of action on page six. Also the last paragraph of the prayer to the first cause of action on page 7.

"Said defendants also move the court to strike from said petition as amended to following parts of the alleged second cause of action: Beginning with the third paragraph on page ten with the words, 'Plaintiff further says that Cynthia T. Aaronson is the widow of L. E. Z. Aaronson, deceased,' and continuing through such alleged second cause of action to and including the third paragraph on the last page immediately before the first paragraph of the prayer. Also the second and third paragraphs of the prayer to the alleged second cause of action.

"Said defendants further move the court to strike from the petition all of the alleged Schedule 1, consisting of three pages, and all of the alleged amendment to petition filed herein April 6, 1929.

"All for the reason that the same is incompetent, irrelevant, and immaterial, surplusage and redundant."

There was filed on the 10th of April, 1929, on behalf of Millicent Aaronson, a demurrer to the amended petition, because it "does not state facts sufficient to constitute a cause of action against this moving defendant and in favor of the plaintiff." On the same day there was filed a similar demurrer by Cynthia T. Aaronson. There appears in the record a motion for a new trial filed by Robert L. Owen on the 13th of June, 1929, in which he asks the court to vacate and set aside the order of the court sustaining the demurrer of Cynthia T. Aaronson, executrix, and the judgment of the court dismissing the cause, and rendering judgment in favor of the said defendant, it being contrary to law. A similar motion was filed with reference to sustaining the demurrer of Alfred E. Aaronson and judgment of the court dismissing the cause and rendering judgment. A similar motion was filed with reference to sustaining the demurrer of Millicent Aaronson and the judgment of the court in dismissing the cause and rendering judgment. A similar motion was filed with reference to the demurrer of Cynthia T. Aaronson.

The journal entry can be found on page 41 of the case-made, and it shows that on the 13th of June, 1929, the demurrer of Cynthia T. Aaronson came on for hearing, and the demurrer of Millicent Aaronson came on for hearing, and also the motion to strike, made by the defendants Alfred E. Aaronson and Cynthia T. Aaronson, which is set out in the journal entry, came on for hearing, and it shows that the court, being fully advised, sustained the demurrer of Cynthia T. Aaronson, and sustained the demurrer of Millicent Aaronson, and sustained the motion of Alfred E. Aaronson and Cynthia T. Aaronson to strike, and exceptions to all orders and election by plaintiff to stand on the petition as amended. Ten days were allowed Cynthia

T. Aaronson, executrix, and Alfred E. Aaronson to plead further. The judgment is that nothing be taken as against Cynthia T. Aaronson and Millicent Aaronson, and judgment for costs was rendered, and notice of appeal was given to this court from the order sustaining demurrer of Cynthia T. Aaronson and sustaining the demurrer of Millicent Aaronson and sustaining the motion to strike of Alfred E. Aaronson and Cynthia T. Aaronson, and from the judgment in favor of these parties. Time was given to make a case, and there followed, in due course, case-made and assignments of error here.

In the brief of the plaintiff in error is set out in full the petition, and the amendments, and the schedules, and the motion to strike, and the demurrers. The argument of the plaintiff in error is that all the assignments go to the one proposition of the sufficiency of the petition to state a cause of action, and the discussion is under the head of propositions.

The first proposition is that the plaintiff in error, Robert L. Owen, is a judgment creditor and has a valid judgment of a court of general jurisdiction against Cynthia T. Aaronson, executrix of the estate of L. E. Z. Aaronson. The case of Bowling v. Merry, 91 Okla. 176, 217 P. 404, is cited to show the authority of the county court. The case of Manuel v. Kidd, 126 Okla. 71, 258 P. 732, is cited to the same proposition. Woods v. Vann, 125 Okla. 121, 256 P. 918, and Treese v. Horany, 119 Okla. 64, 248 P. 557, are cited.

On the second proposition it is claimed that the purpose of this petition or bill is to reach the interest of the debtor, L. E. Z. Aaronson, in property or funds held in trust, and several cases from other jurisdictions are cited, and also section 1205, C. O. S. 1921, requiring the administrator to prosecute to final judgment any proper action for the recovery of property fraudulently conveyed.

Under the head of proposition No. 3, is discussed the action of the court in striking out the material parts of the petition as to the executrix and Alfred E. Aaronson, and the conclusion of the matter is that the decedent was indebted to the plaintiff below, and he owned the property standing in the name of his wife and his comaker's wife, and satisfaction out of it is sought.

The defendants in error have filed a counter brief, and have made some counter statements, and it comments upon the cases cited by the plaintiff below, and cite the case of Porter v. Rott, 116 Okla. 3, 243 P. 160, and also Wasson v. Anglo-Texas Oil Co., 129 Okla. 222, 264 P. 164, and sets out extracts from the latter case. There is also cited 15 C. J. 1388, and the California case of MaGraw v. McGlynn, 26 Cal. 420, and also the case of Louis v. Triscony, 58 Cal. 304, and 24 C. J. 382. The case of Dunnett v. Shields, 97 Vt. 419, 123 Atl. 626, is cited as to the effect of the Vermont law of an allowance. At page 10 contention is made that the title to the property was never vested in L. E. Z. Aaronson, and that section 1205, C. O. S. 1921, cited by the plaintiff, is not applicable, and the argument is made that schedule No. 1 was made two and one-half years before Owen's note was dated and was not made for his use. The conclusion of the brief is as follows:

"The petition is nothing but a feeble gesture towards a fishing expedition by the plaintiff for no other reason than the defendant, Cynthia T. Aaronson, was the wife of L. E. Z. Aaronson in his lifetime, and the defendant, Millicent Aaronson, his daughter-in-law. They have some property which was never owned nor in the name of L. E. Z. Aaronson, deceased. No deed or will or other instrument ever attempted to create or impress it with a trust. Outside of the relationship of the parties, the same allegations might be made in the petition respecting the property of any other person, and if sustained would keep such defendants in court, harassed with a lawsuit in which they have no interest until such time as the plaintiff might determine if he is entitled to a judgment against the other defendants, and if successful, proceed with his fishing expedition as to Cynthia T. Aaronson, personally, and Millicent Aaronson. There could be no semblance of justice in such a procedure, and the trial court fully recognized that fact when he sustained these demurrers, and these defendants earnestly insist that the ruling and judgment of the trial court was right and should be affirmed."

From this general statement, it can be seen that the relevant questions are, What are the force and effect of the allowance of the claim as against the estate of the debtor that is alleged to own the property? And, further, What remedy, if any, has the creditor of the decedent, who after getting his claim allowed, finds that the executrix holds the property as her own, which is alleged to belong to the estate; and also where a daughter-in-law, the wife of one of the comakers of the note, owns other parts of the property alleged to have belonged to the decedent? Most clearly, if such holding of the property is the case, there should be some way to subject it.

The Constitution of this state, in the Bill of Rights, provides in article 2, sec. 6, as follows:

"Sec. 6. Courts of justice open—speedy remedy. The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation: and right and justice shall be administered without sale, denial, delay, or prejudice."

The time was when the distinction between the courts of law, as distinguished from the court of equity, was very closely marked and defined. In course of time, when kindly prerogative ceased, and the Chancellor was no longer the keeper of the King's conscience, and representative government began to take hold, the reason for the exercise through the medium of the Chancellor of the conscience of the King began to grow less, and gradually the distinction between the courts of equity as such, and the courts of law as such, began to fade, all being based upon the principle of common right and justice between man and man.

In the practice in this state, on the east side, during the time it was under the federal authority, there was preserved an equity docket and a common-law docket, but the methods of administration were practically the same, whether on the common-law side of the docket, or on the equity side of the docket. The distinction of most importance was that on the common-law side juries were used and the evidence generally was oral, and on the equity side the judge was used for the ascertaining of the truth and the evidence was reduced to writing. On the west side, these distinctions were broken down, and have been broken down in most of the states in the Union, and even as conservative as the Supreme Court of the United States is, it is gradually getting away from a hard and fast rule, as shown by the things that can be done in an equity court. The watch-word of the modern times is, or should be, that for the best interest of the country, there should be an end of litigation, or as stated in the language of the olden times:

"Interest rei publicae, ut sit finis litium."

One of the original grounds of equitable jurisprudence was that by coming into court and making the parties numerous, the plaintiff could avoid a multiplicity of suits, and to such an extent was this carried, that the United States government, in its protective power over the Indians, brought about 30,-000 lawsuits, practically as one, by using subdivisions depending on the facts in each particular kind of case to clear the titles of the Indians that had been clouded by the machinations of themselves and those taking advantage of them, and it was held that the proceeding was allowable.

As applied to this case, the Code of law that was brought over from the west side of the state and continued practically abolished forms of action as found at page 353, under classification of civil and criminal actions, and paragraph 178, C. O. S. 1921, which is as follows:

"178. Distinctions abolished. The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

The Constitution provides a county court, and gave it original jurisdiction in probate matters in section 13 of article 7, said section being as follows:

"Sec. 13. Probate jurisdiction of county court—where held. The county court shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof. The county court shall be held at the county seat, but the Legislature may provide for holding sessions of the county court at not more than two additional places in the county: Provided, that alternate sessions of county court in LeFlore county shall be held at Talihina."

The statutory provisions that were brought over by the schedule with reference to claims against estates are found in article 7, ch. 5, beginning with section 1232, C. O. S. 1921, and under its plenary power in police matters, the Legislature provided for the presentation of claim to the executor, fixed a time for this to be done, and provided that if the claims were not presented, unless some excuse was given for the nonpresentation, they would be barred, and provided a forum for the establishment of the claim, and its allowance by the administrative officer and its approval by the judge. In section 1230, it is provided that an allowed claim should be "ranked among the acknowledged debts of the estate, to be paid in due course of administration." Section 1240 provides for suit only where the claim has been rejected. Section 1242 prescribed that no suit could be brought without the claim having been presented. If the claim were allowed, there would be nothing to sue for. It would be a useless procedure. Our statute, in order to bring within the probate jurisdiction an allowance of

claims against the decedent, provides that when an action is pending at death, the claim would have to be allowed. In section 1246 is prescribed what the effect of the judgment would be, namely, the same as the allowance of the claim by the probate court, and the judgment shall not be a priority.

Evidently the plaintiff below awoke to the fact that, when his debtor died, all claims presented would take their priority according to classification, and that being a simple contract creditor, he would not be entitled to a priority, and made his amendments accordingly. We think, therefore, that the plaintiff below has done all he could do to come within the technical definition of a creditor by judgment, and that he has exhausted his legal remedies therefor, and would be entitled to come into the district court to recover his debt, and subject to its satisfaction property, the title to which was held by the executrix in her own name in trust for the debtor. It is generally recognized that the executor is a trustee for creditors and heirs. It has been generally so treated everywhere until it is a matter of commonplace that the executor holds the property of the decedent for creditors and heirs.

The machinery of the probate court is not adequate for the purpose of setting aside conveyances or decreeing record holders to be trustees. This jurisdiction has always resided in the courts of equity, so-called, and so far has that been carried that the United States courts at times administer estates of decedents, dying in various states, when outside creditors are concerned. We can see no legal reason why the procedure, resorted to in this case could not be had. The flexibility of the procedure is such that all the parties holding the property are made parties, which could not be done in the probate court. Here the holders are made parties. The allegation is that they hold the property in trust for the deceased, and it is subject to the satisfaction of his creditors. If, in fact, it belongs to the deceased rightfully, to exempt it would be a fraud, and a court of equity has ever exerted its power to prevent and to unearth fraud, and in cases with reference to trust property, and with reference to adjustment with a view of protecting the rights of creditors, whether general or special. As applied to the case at hand, on the allegations made, the parties should not only be brought into court, but a hearing should be had.

It may be that some of the things urged in the brief of the defendants in error may develop on the trial, and that the wives of the original debtors may be justly entitled to the property, but that could much better be determined after an investigation than to determine it adversely by sustaining a demurrer and motion to strike.

The case of Ziska v. Ziska, 20 Okla. 634, 95 P. 254, which was decided by this court very early in its history, is instructive, if not decisive. The court, at page 647, says:

"In the Missouri case the court says:

"'The judgment creditor must first exhaust his legal remedies, and this is usually done by obtaining judgment and execution, with return of nulla bona. But, where it is shown that the judgment debtor is insolvent, and that the issue of an execution would be of no practical utility, its issue may be dispensed with, and the attaching creditor may resort directly to chancery for his remedy against such judgment creditor without such prior proceedings.'

"This is also the rule adopted in the United States Supreme Court as declared in the case of Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004:

"'The rule is a familiar one that a court of equity will not entertain a case for relief where the complainant has an adequate legal remedy. The complaining party must therefore show that he has done all that he could do at law to obtain his rights. But, after all, the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means of proof. The necessity of resort to a court of equity may be made otherwise to appear. Accordingly, the rule, though general, is not without many exceptions. Neither law nor equity requires a meaningless form, "Bona, sed impossibilia non cogit lex." It has been decided that where it appears by the bill that the debtor is insolvent, and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference. Turner v. Adams, 46 Mo. 95; Postlewait & Creagan and Keeler v. Howes, 3 Iowa, 365; Ticonic Bank v. Harvey, 16 Iowa, 141; Botsford v. Beers, 11 Conn. 369; Payne v. Sheldon, 63 Barb. (N. Y.) 169. This is certainly true where the creditor has a lien or a trust in his favor.'"

And at page 651 of 20 Okla.:

"There is no question but that under the ancient practice as it obtained in England, and later in the United States, and still in some courts of this country, where the courts of law and equity are separate tribunals, and where the rule was observed that equity granted relief in those cases only where the law by reason of its universality was not adequate, it was a practice to require the

222

judgment creditor to have an execution issued and a return thereon nulla bona before equity would reach out its strong arm and render any assistance, and that this was the only proof that such courts would receive to show that the creditor was without remedy or had exhausted the same at law. But, under our modern practice, a great many of the old forms and proceedings are no longer observed, and in our courts today, where law and equity are both administered in one form of action, and by the same courts, the reason for the rule is passed and gone, and, when the reason is gone, the rule should and does go with it. Such is the law, in our judgment, in this jurisdiction, and such do we believe to be its declaration by the best authorities. 20 Cyc. 726; Ryan v. Spieth, 18 Mont. 45, 44 P. 403; Bomberger v. Turner, 13 Ohio St. 263, 82 Am. Dec. 438; Lee v. Orr, 70 Cal. 398, 11 P. 745; Merry & Glenny v. Fremon, 44 Mo. 518; Fleischner v. Bank, 36 Or. 553, 54 P. 884, 60 P. 603, 61 P. 345."

By reference to Bispham on Equity, the origin of this class of suits can be ascertained. Section 33 refers to creditors' bills, both before and after death. It is not necessary to quote it here, as it is in every library. The general subject of administration suits is discussed in chapter 6. Both creditors' bills as against a person alive, and as against his executor or administrator, are there analyzed. Some authorities are cited. They are naturally a little old, but the foundation is so old that it is no longer doubted. The necessity of execution and nulla bona is discussed, and it appears that from the authority there cited, a return of nulla bona on execution is not a prerequisite in filing an administration suit in a case of this kind.

Among other cases that are cited is Hagan v. Walker, 14 How. 33, 14 L. Ed. 313. That case holds the jurisdiction of equity in a matter of this kind is complete, and that it is not necessary to have a judgment and return of nulla bona. Tested by these cases and general principles, the demurrer below should not have been sustained.

We think that the cause should be reversed and the demurrer should be overruled, and the motion to strike overruled, and that an answer should be filed, setting up the facts, whatever they are, and that the case proceed. It is accordingly ordered that the case be reversed, with directions to proceed as above indicated.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. ANDREWS, J., absent.